No. 22-_____

In the

# United States Court of Appeals
## for the Third Circuit

---

NORTHROP GRUMMAN SHIP SYSTEMS, INCORPORATED, formerly known as
Ingalls Shipbuilding, Incorporated
*Plaintiff - Appellant*

v.

THE MINISTRY OF DEFENSE OF THE REPUBLIC OF VENEZUELA,
PETROLEOS DE VENEZUELA, S.A.
*Defendant - Appellee*

&

PETROLEOS DE VENEZUELA, S.A.
*Intervenor - Appellee*

-------------------------------------

**On Appeal from the United States District Court
for the District of Delaware**
Case no. 1:20-mc-257-LPS
Honorable Leonard P. Stark

---

**PETITION FOR PERMISSION TO APPEAL
PURSUANT TO 28 U.S.C. § 1292(b)**

---

Alexander A. Yanos
Rajat Rana
Alston & Bird LLP
90 Park Avenue
New York, NY 10016
(212) 210-9400
alex.yanos@alston.com
rajat.rana@alston.com
*Counsel for Plaintiff – Appellant*

## **CORPORATE DISCLOSURE**

Northrop Grumman Ship Systems, Inc., formerly known as Ingalls Shipbuilding, Inc., and now known as Huntington Ingalls Incorporated, a subsidiary of Huntington Ingalls Industries, Inc., which is a publicly-held corporation in which State Street Corporation, in its various capacities, holds more than 10% of the stock.

# **TABLE OF CONTENTS**

INTRODUCTION ...................................................................................1

QUESTION PRESENTED......................................................................2

RELIEF SOUGHT..................................................................................3

FACTUAL BACKGROUND....................................................................3

    I.     The District Court previously concluded that pdvsa is the alter ego of venezuela in in the *Crystallex* case. ..........................................4

    II.    The District Court denied Collateral Estoppel Effect to the alter ego finding in the *Crystallex* case .................................................6

    III.   Huntington Ingalls' Pending Motion for Writ of Attachment .............8

REASONS FOR GRANTING THE PETITION.......................................9

    I.     The District Court's Ruling on the "Pertinent Time" for the Alter Ego Analysis Presents a Controlling and Important Question of Law ......................................................................9

    II.    the District Court's Ruling Is Incorrect.............................................10

         A.    The District Court's Decision Produced Inequitable Results.....................................................................11

         B.    The Court Could Assess The Alter Ego Relationship At The Time Liability Accrues. .....................................16

    III.   Immediate Appeal Will Prevent Prejudice and Materially Advance the Proceedings Below........................................19

CONCLUSION.....................................................................................20

CERTIFICATE OF BAR MEMBERSHIP...............................................22

COMBINED CERTIFICATE OF COMPLIANCE ..................................23

CERTIFICATE OF SERVICE ...............................................................24

# TABLE OF AUTHORITIES

**Cases**                                                **Page(s)**

*Chicago Florsheim Shoe v. Cluett, Peabody & Co.*,
826 F.2d 725 (7th Cir. 1987) ............................................................16

*City of Almaty v. Ablyazov*,
No. 15-CV-5345 (ASN), 2019 U.S. Dist. LEXIS 55183 (S.D.N.Y.
Mar. 29, 2019).................................................................................17

*Connors v. Peles*,
724 F. Supp. 1538 (W.D. Pa. 1989)........................................... 16-17

*Crystallex Int'l Corp. v. Bolivarian Rep. of Venez.*,
333 F. Supp. 3d 380 (D. Del. 2018).............................................passim

*Crystallex Int'l Corp. v. PDV Holding Inc.*,
No. 15-cv-1082-LPS, 2019 U.S. Dist. LEXIS 214167 (D. Del.
Dec. 12, 2019)...............................................................................6, 7

*Crystallex Int'l Corp. v. Bolivarian Rep. of Venez.*,
932 F.3d 126 (3d Cir. 2019), *cert. denied*, *Bolivarian Rep. of
Venez. v. Crystallex Int'l Corp.*, 206 L.Ed.2d 936 (2020).....................5, 10, 18

*Crystallex Int'l Corp. v. Bolivarian Rep. of Venez.*,
No. 17-mc-151-LPS, 2021 U.S. Dist. LEXIS 7793 (D. Del. Jan.
14, 2021) ......................................................................................passim

*Equal Rights Ctr. v. Equity Residential*,
No. CCB-06-1060, 2016 U.S. Dist. LEXIS 44027 (D. Md. Mar.
31, 2016) .........................................................................................16

*First Nat'l City Bank v. Banco Para El Comercio Exterior de Cuba*,
462 U.S. 611 (1983)....................................................................passim

*Gulf Petro Trading Co. v. Nigerian Nat'l Petro. Corp.*,
512 F.3d 742 (5th Cir. 2008) ...........................................................13

*In re Wolf*,
595 B.R. 735 (Bankr. N.D. Ill. 2018) ...............................................17

iv

*Kessinger v. Gen. Mining Union Corp.*,
  No. 85-3092, 1986 U.S. Dist. LEXIS 31038 (C.D. Ill. Mar. 26,
  1986) ...............................................................................................17

*Northrop Grumman Ship Sys. v. Ministry of Def. of the Rep. of Venez.*,
  850 F. App'x 218 (5th Cir. 2021) .................................................4, 15

*Northrop Grumman Ship Sys. v. Ministry of Def. of the Rep. of Venez.*,
  No. 1:02cv785-HSO-RHW, 2020 U.S. Dist. LEXIS 56586 (S.D.
  Miss. Mar. 31, 2020).............................................................3, 4, 15

*Northrop Grumman Ship Sys. v. Ministry of Def. of the Rep. of Venez.*,
  No. 1:20-mc-257-LPS, D.I. 1 ...............................................................4

*OI European Group, B.V. v. Bolivarian Rep. of Venez.*,
  19-mc-290-LPS........................................................................................6

*Patin v. Thoroughbred Power Boats, Inc.*,
  294 F.3d 640 (5th Cir. 2002) ....................................................... 10-11

*Pearson v. Component Tech. Corp.*,
  247 F.3d 471 (3d Cir. 2001) ...............................................................11

*Saint-Gobain Performance Plastics Europe v. Bolivarian Rep. of
  Venez.*,
  18-cv-1963-LPS........................................................................................6

*Trs. of the Heating, Piping & Refrigeration Pension Fund v.
  Conditioned Air Sys.*,
  No. CCB-12-604, 2014 U.S. Dist. LEXIS 41981
  (D. Md. Mar. 28, 2014).......................................................................19

*Trs. of the N.Y.C. Dist. Council of Carpenters Pension Fund v. B&L
  Moving & Installation, Inc.*,
  No. 16-CV-4734 (GBD) (JLC), 2017 U.S. Dist. LEXIS 157756
  (S.D.N.Y. Sep. 26, 2017)....................................................................11

*Trs. of the Nat'l Elevator Indus. Pension, Health Benefit & Educ.
  Funds v. Lutyk*,
  332 F.3d 188 (3d Cir. 2003) ..............................................11, 13, 16

*Trs. of Nat'l Elevator Indus. Pension, Health Benefit & Educ. Funds v. Lutyk*, 140 F. Supp. 2d 447 (E.D. Pa. 2001), *aff'd sub nom.*, *Trs. of Nat'l Elevator Indus. Pension, Health Benefit and Educ. Funds v. Lutyk*, 332 F.3d 188 (3d Cir. 2003) ................................................. 16

*Wm. Passalacqua Builders, Inc. v. Resnick Developers S., Inc.*, 608 F. Supp. 1261 (S.D.N.Y. 1985) ....................................................... 17

## Rules

Federal Rule of Appellate Procedure 5 ...................................................... 1

Federal Rule of Civil Procedure 60(b)(6) ................................................. 7

## Statutes

9 U.S.C. § 207 ......................................................................................... 13

9 U.S.C. § 302 ......................................................................................... 13

28 U.S.C. § 1292(b) ................................................................................. 1

Foreign Sovereign Immunities Act ......................................................... 5

## Other Authorities

19 Moore's Federal Practice - Civil § 203.31 (2022) .............................. 19

William Meade Fletcher, Fletcher Cyclopedia of the Law of Private Corporations (2002) ............................................................................. 10

Inter-American Convention on International Commercial Arbitration, 1438 U.N.T.S. 245 (1975) ................................................................. 13

# **INTRODUCTION**

Pursuant to Federal Rule of Appellate Procedure 5 and 28 U.S.C. § 1292(b), Plaintiff-Appellant Northrop Grumman Ship Systems, Inc., formerly known as Ingalls Shipbuilding, Inc., and now known as Huntington Ingalls Incorporated ("Huntington Ingalls") petitions the Court for permission to appeal a May 4, 2022, certified interlocutory order ("Certified Order") in the matter *Northrop Grumman Ship Systems, Inc. v. The Ministry of Defense for the Republic of Venezuela*, 1:20-mc-257-LPS, currently pending in the District of Delaware before Judge Leonard P. Stark.[1]  *See* Exhibit B (March 2, 2022 Order); Exhibit D (Memorandum Opinion amending March 2, 2022 Order and certifying questions for interlocutory appeal).

Huntington Ingalls is but one judgment creditor of debtor the Bolivarian Republic of Venezuela ("Venezuela") that has moved the Delaware District Court for a writ of attachment seeking shares of PDV Holding, Inc. ("PDVH"), a Delaware corporation fully owned by Petróleos de Venezuela S.A. ("PDVSA"), the state oil company that the Delaware District Court found in 2018 to be the alter ego of Venezuela in the related *Crystallex* attachment proceedings.  Like Crystallex International Corporation ("Crystallex"), Huntington Ingalls seeks to attach the PDVH shares because PDVSA is Venezuela's alter ego.  A question has arisen as to

---

[1] Judge Stark has been assigned to remain on these cases despite his recent appointment to the Federal Circuit. *See* Exhibit D at 6 n. 3.

what constitutes the "pertinent time" to consider the alleged alter ego relationship between Venezuela and PDVSA. Should it be "(i) the period between a judgment creditor filing a motion seeking a writ of attachment and the subsequent issuance and service of the writ, (ii) the time of the injury that gave rise to the judgment creditor's judgment, or (iii) some other time[?]" Exhibit D at 9. The District Court certified this "pertinent time" issue for an interlocutory appeal because "the Third Circuit's input at this stage would help facilitate the ultimate termination of this litigation as the Court would know, with confidence, whether it needs to evaluate the alter ego question again and again." *Id.* at 8. Furthermore, "the foreign policy considerations and large amounts of money at stake in these cases present exceptional circumstances that make interlocutory review of the pertinent time issue especially appropriate." *Id.* Accordingly, Huntington Ingalls petitions the Court to accept this appeal to determine what pertinent time governs the alter ego analysis, such as the time that Venezuela's liability accrued.

## QUESTION PRESENTED

The District Court certified the following question for interlocutory appeal:

Whether the pertinent time for conducting an alter ego analysis with respect to the Bolivarian Republic of Venezuela and Petróleos de Venezuela, S.A. is: (i) the period between a judgment creditor filing a motion seeking a writ of attachment and the subsequent issuance and service of the writ, (ii) the time of the injury that gave rise to the judgment creditor's judgment, or (iii) some other time.

Exhibit D at 9.

**RELIEF SOUGHT**

Huntington Ingalls requests that the Court accept this petition for leave to appeal and reverse the District Court's determination that the pertinent period of time in which a court should analyze the existence of an alleged alter ego relationship between a judgment debtor and a third party is the time between a judgment creditor filing a motion seeking a writ of attachment and the subsequent issuance and service of the writ. The Court should hold instead that the pertinent time for determining whether PDVSA is Venezuela's alter ego is the date in which Venezuela's liability accrued. In considering this issue, the Court may see fit to consolidate the petition with that of OI European Group B.V. ("OIEG")—a judgment creditor in a parallel proceeding seeking an alter ego determination against Venezuela and PDVSA.

**FACTUAL BACKGROUND**

In 2018, Huntington Ingalls received an international arbitration award rendered against Venezuela in the amount of $137,977,646.43. Exhibit A at 3. The award resolved a 15-year dispute arose from a 1997 contract for the refurbishment of Venezuelan warships. *Northrop Grumman Ship Sys. v. Ministry of Def. of the Rep. of Venez.*, No. 1:02cv785-HSO-RHW, 2020 U.S. Dist. LEXIS 56586, at *3–4. (S.D. Miss. Mar. 31, 2020). Huntington Ingalls' claim materialized in 2002, when attempts to resolve the dispute amicably failed and Ingalls Shipbuilding, Inc. (Huntington Ingalls' predecessor in interest) sent Venezuela an arbitration demand

pursuant to the contract. *See id.* at *3–5. In 2020, after years of Venezuela delaying arbitration, Huntington Ingalls successfully enforced that award in the United States District Court for the Southern District of Mississippi.[2] *Id.* at *12–21. To collect on Venezuela's debt, Huntington Ingalls transferred its judgment to the District of Delaware and filed a motion authorizing a conditional writ of attachment *fieri facias* ("*fi. fa.*") seeking the shares of PDVH, a Delaware corporation fully-owned by PDVSA, the state oil company of judgment debtor Venezuela. *See Northrop Grumman Ship Sys. v. Ministry of Def. of the Rep. of Venez.*, No. 1:20-mc-257-LPS, D.I. 1. As part of these enforcement proceedings, Huntington Ingalls seeks to prove that the state oil company is the alter ego of Venezuela. Questions, however, have risen as to what period of time the District Court should analyze the relationship between the State and its oil company.

## I.    THE DISTRICT COURT PREVIOUSLY CONCLUDED THAT PDVSA IS THE ALTER EGO OF VENEZUELA IN IN THE *CRYSTALLEX* CASE.

On August 9, 2018, the District of Delaware in the *Crystallex* proceedings found that PDVSA was Venezuela's alter ego. *See Crystallex Int'l Corp. v. Bolivarian Rep. of Venez.*, 333 F. Supp. 3d 380 (D. Del. 2018). The District Court applied the test for setting aside the presumption of separateness between a State and

---

[2] Venezuela appealed the Mississippi District Court's decision to the Fifth Circuit but handily lost. *See Northrop Grumman Ship Sys. v. Ministry of Def. of the Rep. of Venez.*, 850 F. App'x 218 (5th Cir. 2021).

its instrumentality set forth in seminal case *First National City Bank v. Banco Para El Comercio Exterior de Cuba*, 462 U.S. 611 (1983) ("*Bancec*"). *Id.* at 397. The extensive record in *Crystallex* spanned between 2002 to 2018 and proved that the Venezuelan State exerted pervasive control over PDVSA, "including its day-to-day operations" thus "rendering PDVSA the alter ego of Venezuela." *Id.* at 399.

Because PDVSA was the alter ego of Venezuela, Crystallex was allowed to proceed toward the eventual attachment of the PDVH shares located in the District of Delaware consistent with the Foreign Sovereign Immunities Act because those shares legally constituted Venezuela's property used in commerce. *See id.* at 418. This Court affirmed the District Court's decision and the Supreme Court subsequently denied certiorari in May 2020. *See Crystallex Int'l Corp. v. Bolivarian Rep. of Venez.*, 932 F.3d 126, 150 (3d Cir. 2019), *cert. denied, Bolivarian Rep. of Venez. v. Crystallex Int'l Corp.*, 206 L.Ed.2d 936 (2020).[3]

---

[3] Of note, it was in the 2019 appeal before this Court that the question of what period of time courts should consider for the alter ego analysis arose—albeit improperly. For the first time on appeal, Venezuela argued "that the relevant time for a *Bancec* analysis of the relationship between a sovereign and its instrumentality is the moment the writ is issued." *Crystallex Int'l Corp.*, 932 F.3d at 144. But the Court was not in a position to weigh in on that question. Not only did Venezuela have "no authority for [its] proposition," it also failed to state why the Court should deviate from the "normal course" of reviewing the exact record presented to the District Court. *Id.* Therefore, the Court left undisturbed the District Court's decision analyzing the alter ego relationship between PDVSA and Venezuela as of August of 2019.

## II.   THE DISTRICT COURT DENIED COLLATERAL ESTOPPEL EFFECT TO THE ALTER EGO FINDING IN THE *CRYSTALLEX* CASE

With an alter ego finding in hand, the *Crystallex* proceedings are moving forward toward the auction of the PDVH shares.  But Crystallex was not Venezuela's only judgment creditor.  Several other parties filed petitions for writs of attachment in the District of Delaware.  And several of the new judgment creditors relied upon the August 2018 alter ego finding as the basis for their petitions.  *See*, *e.g.*, *OI European Group, B.V. v. Bolivarian Rep. of Venez.*, 19-mc-290-LPS; *Saint-Gobain Performance Plastics Europe v. Bolivarian Rep. of Venez.*, 18-cv-1963-LPS.  The District Court, however, ruled in a December 2019 order spanning multiple matters that it would not give collateral estoppel effect to the August 2018 alter ego finding.  *See generally Crystallex Int'l Corp. v. PDV Holding Inc.*, No. 15-cv-1082-LPS, 2019 U.S. Dist. LEXIS 214167 (D. Del. Dec. 12, 2019).  The District Court fell short of a clear holding on what time governed the alter ego analysis, though.  It simply recognized that it was not "clear that the pertinent date as to which the Court must decide whether PDVSA was or is the alter ego of Venezuela in connection with [new creditors'] action[s] is the same August 2018 date the Court analyzed in the *Crystallex Asset Proceeding*." *Id.* at *20–21.  The District Court stated that "the pertinent date on which an alter ego relationship must exist (or must have existed) may well differ in different cases involving different creditors." *Id.* at *21.  As a

result, the District Court was "not persuaded at this point that its finding of an alter ego relationship as of August 2018 is dispositive of whether such a relationship existed at any other time." *Id.*

As the *Crystallex* attachment proceedings continued, the District Court took a more decisive stance on the "pertinent time" issue in January of 2021 when it dismissed Venezuela's Rule 60(b)(6) motion challenging the 2018 *Crystallex* alter ego finding.  There, the District Court held that courts should analyze alter ego relationships in "the period between the filing of the motion seeking a writ of attachment and the subsequent issuance and service of that writ." *Crystallex Int'l Corp. v. Bolivarian Rep. of Venez.*, No. 17-mc-151-LPS, 2021 U.S. Dist. LEXIS 7793, at *18 (D. Del. Jan. 14, 2021).  In that same decision, the District Court justified its dismissal of Venezuela's motion to reconsider the 2018 decision by recognizing "the very purpose of a writ of attachment" based on an alter ego finding, "which is to hold property of a judgment debtor in the custody of the Court so it can be used for the benefit of the judgment creditor ***no matter what happens in the future***." *Id.* (emphasis in original).  Reopening the 2018 alter ego decision to consider new facts "crediting Venezuela's position could render th[e] entire litigation a nullity." *Id.*  Therefore, for Crystallex, Venezuela could not emphasize any changed circumstances today in an attempt to muddy the 2018 alter ego finding

and sidestep paying on its long overdue judgment. This is sound logic but misunderstands the proper date for its application.

## III.    HUNTINGTON INGALLS' PENDING MOTION FOR WRIT OF ATTACHMENT

Since bringing its own attachment proceedings, Huntington Ingalls has litigated the issue of PDVSA's alter ego status pursuant to the District Court's view of the pertinent time analysis, focusing on PDVSA's relationship with Venezuela to date. In April 2021, Huntington Ingalls and OIEG participated in an all-day evidentiary hearing providing evidence that PDVSA remains Venezuela's alter as of that day. Exhibit A at 26. Over a year later, on March 2, 2022, the District Court found that it had the authority to issue writs of attachment conditioned upon the judgment creditors' eventual receipt of a special license from the Office of Foreign Assets Control ("OFAC"). *Id.* at 12–18. It left open, however, whether it should grant such a conditional writ to Huntington Ingalls as the Court had yet to resolve whether PDVSA continued to act as the alter ego of Venezuela after its 2018 decision. The District Court stated that, "[e]ven though OIEG and Huntington Ingalls already had a chance in April 2021 to offer evidence regarding PDVSA's status as the Republic's alter ego at that time, another evidentiary hearing may be necessary for the Court to consider any further developments before the end of the relevant time period"—*i.e.*, the undetermined date in the future when the District Court does grant a writ. *Id.* at 27.

After seeking input from the parties (*see* Exhibit C), the District Court issued the Certified Order (Exhibit D), amending the March 2, 2022 Order (Exhibit B) and formally declining to issue the conditional writ while allowing the parties to petition this Court for an appeal the pertinent time issue.[4]  Recent rulings have emphasized the inequitable effect of the District Court's ruling on timing of an alter ego analysis: while Huntington Ingalls received an award against Venezuela in February 2018, just two years after Crystallex itself received its ICSID award,[5] it was left to litigate the alter ego issue again and again—all while Crystallex leveraged a conclusive finding and enjoyed the benefit of its writ "*no matter what happens in the future*." *Crystallex Int'l Corp.*, 2021 U.S. Dist. LEXIS 7793, at *18. (emphasis in original).

## REASONS FOR GRANTING THE PETITION

**I.    THE DISTRICT COURT'S RULING ON THE "PERTINENT TIME" FOR THE ALTER EGO ANALYSIS PRESENTS A CONTROLLING AND IMPORTANT QUESTION OF LAW**

As the District Court recognized when certifying its May 4, 2022, order for an interlocutory appeal, "[t]he pertinent time issue presents a controlling question of

---

[4] The Certified Order also approved the appeal of whether the sanctions regime blocking Venezuela property (including shares of PDVH which judgment creditors such as Huntington Ingalls now seek to attach) prevent the District Court from authorizing a conditional writ of attachment subject to the eventual receipt if an OFAC license.  Exhibit D at 9.  Huntington Ingalls does not appeal the District Court's decision that it does indeed have the authority to issue conditional writs even under the current sanctions on Venezuelan property.

[5] *Crystallex Int'l Corp.*, 333 F. Supp. 3d at 386.

law." Exhibit D at 8. "If the Third Circuit disagrees with this Court and holds that the pertinent time for the alter ego analysis is the time of the injury that gave rise to the underlying judgment, the [District] Court would no longer need to decide whether it must limit its view of the evidence to that involving the administration of Interim President Guaidó." *Id.* In fact, if the Court were to decide that the District Court erred in determining the scope of the pertinent time inquiry, the District Court's 2019 order declining to apply the collateral estoppel doctrine to the alter ego issue would necessarily need to be reconsidered.

What's more, the pertinent time issue presented for the Court's consideration lacks controlling precedent and, as the District Court recognized, has "significant arguments on both sides." *Id.* Indeed, even PDVSA takes a view different from the District Court, having previously argued that the pertinent time should be "at the moment the writ is issued" rather than any point after the initial motion seeking a writ. *See Crystallex Int'l Corp.*, 932 F.3d at 144.

## II.    THE DISTRICT COURT'S RULING IS INCORRECT

The alter ego doctrine "applies when there is such unity between a corporation and an individual that separateness of the corporation has ceased." William Meade Fletcher, Fletcher Cyclopedia of the Law of Private Corporations § 41.25 (2002). When one entity is an alter ego of the other, both are legally one in the same. *See*, *e.g.*, *Patin v. Thoroughbred Power Boats, Inc.*, 294 F.3d 640, 654 (5th Cir. 2002)

(alter egos "are considered to be one and the same under the law").  A party can collect from one off the basis of the other's liability because the property of one is the property of the other.  To be sure: this doctrine is exceptional.  The alter ego doctrine is a highly flexible, fact-specific "tool of equity."  *Trs. of the Nat'l Elevator Indus. Pension, Health Benefit & Educ. Funds v. Lutyk*, 332 F.3d 188, 193 n.6 (3d Cir. 2003) (quoting *Pearson v. Component Tech. Corp*., 247 F.3d 471, 484 (3d Cir. 2001)) ("*Lutyk*"); *see also Trs. of the N.Y.C. Dist. Council of Carpenters Pension Fund v. B&L Moving & Installation, Inc.*, No. 16-CV-4734 (GBD) (JLC), 2017 U.S. Dist. LEXIS 157756, at *8 (S.D.N.Y. Sep. 26, 2017) (stating that the alter ego doctrine is "a 'flexible' test that weighs the circumstances of each case.").  As such, "piercing the corporate veil is not technically a mechanism for imposing 'legal' liability, but for remedying the 'fundamental unfairness [that] will result from a failure to disregard the corporate form.'"  *Lutyk*, 332 F.3d at 193 n.6 (quoting Fletcher Cyclopedia of the Law of Private Corporations § 41.25).

## A. The District Court's Decision Produced Inequitable Results

The District Court's decision to limit this analysis to the time between the filing and the eventual issuance of a writ of attachment misunderstands the underlying purpose of the alter ego doctrine, producing ***inequitable*** results.  Once an award is issued, the award recipient becomes an award creditor and the losing party becomes the award debtor.  If, at that moment, the award debtor is the alter ego

of another party, then by definition that other party is also an award debtor to the award creditor. It should therefore be impossible for the alter ego award debtor to extinguish its debt except by one of the following methods: (1) payment of the debt; (2) assignment of the debt with the creditor's consent; or (3) legal extinction of the award. Here, none of these scenarios have occurred.

The District Court's position is also inequitable for two reasons:

*First*, the District Court's alter ego analysis has created a vast difference between Huntington Ingalls' and Crystallex's claim to PDVSA's shares in PDVH. Crystallex enjoys the assurance of eventually collecting PDVSA stock in PDVH no matter what facts develop tomorrow. In stark contrast, Huntington Ingalls is left in a legal limbo, forced to relitigate the alter ego question based on what new facts appear each day all while waiting for a writ of attachment even though, when Huntington Ingalls received the award in February 2018, the District Court found that PDVSA and Venezuela were one-in-the-same. Exhibit A at 26–27; Exhibit D at 6–7. A nickel in PDVSA's vault was indeed Venezuela's nickel. Therefore, the extent of PDVSA's liability was also defined in regard to Huntington Ingalls. As of 2018, Huntington Ingalls was entitled to collect $137,977,646.43 from either. The only difference between Crystallex and Huntington Ingalls was that Huntington Ingalls still had to domesticate its award before seeking an enforcement action. But that should have no impact on Huntington Ingalls' entitlement to collect from

Venezuela's alter ego. This process did not change or alter Venezuela's (and therefore PDVSA's) liability. It merely stamped the United States' seal of legitimacy.[6]

*Second*, the District Court's pertinent time decision would encourage award debtors to take actions designed to allow them to become judgment proof after a court's final order but before the granting of a writ during execution proceedings. This cannot be the result of a doctrine rooted in equity with the goal of preventing the "fundamental unfairness" resulting from the abuse of the corporate form. *Lutyk*, 332 F.3d at 193 n.6. But the District Court blatantly acknowledged the reality of its decision. In denying Venezuela's request to reconsider the 2018 alter ego findings due to facts that have since developed the District Court stated that, "[b]efore the Court granted Crystallex's motion for a writ, PDVSA was free to alienate its shares of PDVH." *Crystallex Int'l Corp.*, 2021 U.S. Dist. LEXIS 7793, at *19. Yet since the issuance of the writ in Crystallex's favor, "the shares were attached; that is, they

---

[6] It is axiomatic that Congress intended the enforcement of an international arbitration award to be a summary, deferential process. *See* 9 U.S.C. § 302 (incorporating by reference 9 U.S.C. § 207); Inter-American Convention on International Commercial Arbitration, 1438 U.N.T.S. 245 (1975) ("Panama Convention"), Art. V; *Gulf Petro Trading Co. v. Nigerian Nat'l Petro. Corp.*, 512 F.3d 742, 747 (5th Cir. 2008) (stating that "secondary jurisdiction courts may only refuse or stay enforcement of an award on the limited grounds specified in Articles V and VI" of the Convention).

were (and remain) restricted from alienation by operation of the [District] Court's order." *Id.*

The District Court's holding conflicts with *Bancec*, where the Court analyzed the alter ego relationship between Cuba and Bancec, an entity Cuba set up as "an autonomous credit institution." *Bancec*, 462 U.S. at 613. There, Bancec first brought suit to collect on letters of credit, which Citibank counterclaimed to set off the owed amount by the value of its assets the Cuban government nationalized. *Id.* After filing the complaint, ***but before Citibank counter claimed***, Cuba dissolved Bancec and distributed its assets among other entities, including the national bank. *Id.* at 615. Nonetheless, the Court analyzed the relationship between Cuba and the dissolved entity:

> Giving effect to Bancec's separate juridical status in these circumstances, even though it has long been dissolved, would permit the real beneficiary of such an action, the Government of the Republic of Cuba, to obtain relief in our courts that it could not obtain in its own right without waiving its sovereign immunity and answering for the seizure of Citibank's assets -- a seizure previously held by the Court of Appeals to have violated international law. We decline to adhere blindly to the corporate form where doing so would cause such an injustice.

*Id.* at 632. Directly counter to the District Court's decision in the matter below, the Supreme Court in *Bancec* firmly stated that "Cuba cannot escape liability for acts in violation of international law simply by retransferring the assets to separate juridical entities." *Id.* at 633. "To hold otherwise would permit governments to avoid the

requirements of international law simply by creating juridical entities whenever the need arises." *Id.*

The District Court was right in one respect: its analysis does allow judgment debtors to rearrange assets in an attempt to skirt the repercussions of an adverse formal judgment. Indeed, Huntington Ingalls is all too aware of this threat. Throughout the confirmation proceedings in the Southern District of Mississippi, Venezuela engaged in delay tactics, fighting the confirmation of the award by feverously litigating what should otherwise constitute summary proceedings and thereafter instituting an appeal in the Fifth Circuit that it handily lost. *See generally*, *Northrop Grumman Ship Sys.*, 850 F. App'x 218; *Northrop Grumman Ship Sys.*, 2020 U.S. Dist. LEXIS 56586. These delay tactics bought Venezuela (and by extension PDVSA) time to reframe its relationship with PDVSA in an attempt to avoid paying Huntington Ingalls' award.[7]

Equity and fundamental fairness are the north star to a court's alter ego inquiry, but the District Court has yet to apply these principles to Huntington Ingalls. The District Court's assessment of alter egos between the time of filing and the eventual issuance of a writ of attachment frustrates the equitable and flexible nature

---

[7] To be sure, Huntington Ingalls has proved that PDVSA remains Venezuela's alter ego to date. But Huntington Ingalls should not be saddled with the burden of proving that relationship when the record already shows that PDVSA was an alter ego of Venezuela as of the date Huntington Ingalls received its award.

of the doctrine.  The Court should accept this appeal and give Huntington Ingalls the

ability to further explain why the relevant date is the date the award is issued.

## B. The Court Could Assess The Alter Ego Relationship At The Time Liability Accrues.

There are multiple ways courts could analyze an alter ego relationship.  For

example, alter ego liability could be assessed at the time that the principal debtor

incurred liability.  This is no foreign concept; other courts have held the same.  *See*

*Lutyk*, 332 F.3d at 193 n.6 ("Alter ego status is determined by conduct of the parties

that is material to the dispute at hand. . . thus, the theory of harm alleged may affect

the scope of the remedy that equity demands."); *Trs. of Nat'l Elevator Indus.*

*Pension, Health Benefit & Educ. Funds v. Lutyk*, 140 F. Supp. 2d 447, 457 (E.D. Pa.

2001), *aff'd sub nom.*, *Trs. of Nat'l Elevator Indus. Pension, Health Benefit and*

*Educ. Funds v. Lutyk*, 332 F.3d 188 (3d Cir. 2003) ("Here, the relevant time period

is the time at which the corporation incurred liability"); *Equal Rights Ctr. v. Equity*

*Residential*, No. CCB-06-1060, 2016 U.S. Dist. LEXIS 44027, at *16 (D. Md. Mar.

31, 2016) (noting that "traditional veil piercing analysis . . . focuses on the parent-

subsidiary relationship at the time of the events giving rise to the liability."); *Chicago*

*Florsheim Shoe v. Cluett, Peabody & Co.*, 826 F.2d 725 (7th Cir. 1987) (analyzing

alter ego status at the time liability arose); *Connors v. Peles*, 724 F. Supp. 1538,

1560 (W.D. Pa. 1989) (alter ego analysis under ERISA at time of the withdrawal occurred).[8]

Applying this theory to the facts at hand, a claim to an enforcement action accrues from the refusal to pay the underlying debt—here, the February 2018 award. *See City of Almaty v. Ablyazov*, No. 15-CV-5345 (ASN), 2019 U.S. Dist. LEXIS 55183, at *26 (S.D.N.Y. Mar. 29, 2019) ("[A]n alter ego and its principal are treated as one entity for purposes of claim accrual.") (quotation marks omitted); *Wm. Passalacqua Builders, Inc. v. Resnick Developers S., Inc*., 608 F. Supp. 1261, 1264 (S.D.N.Y. 1985) ("The action accrued against both the corporation and any alter egos when the judgment was entered."). That is the nature of the proceedings pending before the District Court below. Huntington Ingalls would not have a claim if Venezuela paid the amount it was found liable of in 2018. There would be no case in controversy remaining. But Venezuela did not pay in 2018. Huntington Ingalls' enforcement claim against Venezuela thereby accrued and it was forced to begin the

---

[8] The same is true under states' alter ego analyses. *See*, *e.g.*, *Kessinger v. Gen. Mining Union Corp*., No. 85-3092, 1986 U.S. Dist. LEXIS 31038, at *13 (C.D. Ill. Mar. 26, 1986) ("Under Illinois law, a cause of action accrues when a plaintiff's injury becomes manifest, and therefore plaintiffs here need prove only that an alter ego relationship existed between Charter and Cape at that time."); *In re Wolf*, 595 B.R. 735, 769-70 (Bankr. N.D. Ill. 2018) (analyzing Delaware and Illinois law, finding that two entities were to be treated as one "legal personality during the period of time over which [one] corporation was used to further [another party's] allegedly fraudulent scheme.").

collection process by turning to the United States judicial system that housed Venezuela's assets in PDVSA.

Following this approach to the alter ego analysis would allow courts to take a firm stand consistent with *Bancec* that award debtors cannot shed their assets after realizing the extent of their liability. Again, the facts of this case provide a clear illustration. Venezuela's debt to Huntington Ingalls accrued in February 2018, just seven months before the District Court in 2018 found that PDVSA was the alter ego of Venezuela based on facts dating back to 2002. *See* Exhibit A at 3; *Crystallex Int'l Corp. v. Bolivarian Rep. of Venez.*, 333 F. Supp. 3d at 406–011 (analyzing facts spanning 2002-18). This Court affirmed that ruling based on the same relevant timeline. *See Crystallex Int'l Corp.*, 932 F.3d at 146 (assessing events "since 2002"); *id.* at 146 (assessing "bondholder disclosures [of State control] in 2011 and 2016"); *id.* at 148 (assessing events in 2014 and 2016). It follows that the Court should find that PDVSA remains liable to Huntington Ingalls to date. If a defendant was found liable and maintained an alter ego at that time of the judgment, then immediately changed how it governed that entity before the time of executing the judgment, it would be inequitable to allow the defendant to seek protection of the corporate form at the eleventh hour. This is especially true where the defendant, like Venezuela with regard to PDVSA, did not sell its controlling stake in the alter ego.

Support for assessing alter ego status at the time liability is finalized in a judgment or award can be found in the reverse situation, where courts have imposed liability upon alter egos for events that ***precede*** their existence. *See Trs. of the Heating, Piping & Refrigeration Pension Fund v. Conditioned Air Sys.*, No. CCB-12-604, 2014 U.S. Dist. LEXIS 41981, at *19 (D. Md. Mar. 28, 2014) ("The creation of a new entity just as Systems was facing increasing liability with respect to its contributions to the 602 Funds indicates alter ego status."). Courts have not allowed judgment debtors to shield their assets in the eleventh hour by creating a new corporation. It follows that courts should also forbid a judgment creditor from protecting its assets by suddenly recognizing corporate formalities at the eleventh hour.

## III. IMMEDIATE APPEAL WILL PREVENT PREJUDICE AND MATERIALLY ADVANCE THE PROCEEDINGS BELOW

"[A] question of law need not completely dispose of the litigation in order to be 'controlling,'" but it should have "the potential of substantially accelerating disposition of the litigation." 19 Moore's Federal Practice - Civil § 203.31 (2022). The Court's decision to grant this petition would materially advance the proceedings below, preventing prejudice to multiple judgment creditors in the process.

Several judgment creditors, such as Huntington Ingalls and OIEG received arbitration awards against Venezuela during the ***same*** period of time in which the District Court has already definitively determined that Venezuela controlled PDVSA

as its alter ego, yet they are left in vastly different positions for collecting on those awards than Crystallex.  Only Crystallex received the District Court's assurance that Venezuela cannot skirt liability in the future by shifting the manner in which it interacts with its alter ego.  A determination by this Court as to when the District Court should assess an alter ego relationship would potentially fast-track certain judgment creditors to step into the collection queue.  If the Court were to decide that the alter ego analysis starts some time before a motion for a writ is filed, neither Huntington Ingalls nor OIEG may need to relitigate the alter ego issue in perpetuity while awaiting the District Court's issuance of a writ.  Instead, both creditors could meaningfully participate in the preparation of auctioning the PDVH shares while awaiting the necessary OFAC license.

## **CONCLUSION**

For the foregoing reasons, Huntington Ingalls respectfully requests that this Court grant the instant Petition for Leave to Appeal the District Court's May 4, 2022, Order and consider whether the pertinent time for analyzing an alter ego relationship is the date in which a debt accrues.

Dated: May 16, 2022
       New York, New York


_____
Alexander A. Yanos

Rajat Rana
ALSTON & BIRD, LLP
90 Park Avenue, 15th Floor
New York, NY 10016-1387
212-210-9400
alex.yanos@alston.com
rajat.rana@alston.com
*Counsel for Northrop Grumman Ship*
*Systems, Inc., f/k/a Ingalls*
*Shipbuilding, Inc.*
*and now known as Huntington Ingalls*
*Incorporated*

## <u>CERTIFICATE OF BAR MEMBERSHIP</u>

I, Alexander A. Yanos, counsel for Petitioner Huntington Ingalls, hereby

certify pursuant to Rule 28.3(d) that I am a member in good standing of the bar of

the Court of Appeals for the Third Circuit.

Dated: May 16, 2022
      New York, New York

 

 

_____
Alexander A. Yanos
ALSTON & BIRD, LLP
90 Park Avenue, 15th Floor
New York, NY 10016-1387
212-210-9400
alex.yanos@alston.com
*Counsel for Northrop Grumman Ship*
*Systems, Inc., f/k/a Ingalls*
*Shipbuilding, Inc.*
*and now known as Huntington Ingalls*
*Incorporated*

## <u>COMBINED CERTIFICATE OF COMPLIANCE</u>

This petition complies with the type-volume limitation of Fed. R. App. P. 5(c)(1) because it contains 5,066 words, excluding the parts exempted by Fed. R. App. P. 32(f).  This petition complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word with 14-point Times New Roman font.

I further certify that all paper copies of the forgoing petition are identical to the electronic copy filed with the Court.  I also certify that this file was scanned with "LITERA Metadact," version 5.6.0.163, as well as "Cortex XDR," version 7.6.0, and no viruses were detected.

Dated: May 16, 2022
     New York, New York

Alexander A. Yanos
ALSTON & BIRD, LLP
90 Park Avenue, 15th Floor
New York, NY 10016-1387
212-210-9400
alex.yanos@alston.com
*Counsel for Northrop Grumman Ship*
*Systems, Inc., f/k/a Ingalls*
*Shipbuilding, Inc.*
*and now known as Huntington Ingalls*
*Incorporated*

## **CERTIFICATE OF SERVICE**

I, Alexander A. Yanos, hereby certify that pursuant to the Clerk of Court's instruction on May 16, 2021, the foregoing petition was electronically filed with the Court by way of emailing a copy to: emergency_motions@ca3.uscourts.gov.

I further certify that on May 16, 2022, I emailed a copy of the foregoing to opposing counsel and also submitted a copy to be printed and served on the same by U.S. mail postage prepaid pursuant to Federal Rule of Appellate Procedure 25(c)(1) to the following:

Lead counsel for the Bolivarian Republic of Venezuela:

> A. Thompson Bayliss
> ABRAMS & BAYLISS LLP
> 20 Montchanin Road, Suite 200
> Wilmington, DE 19807
> Telephone: 302-778-1000
> Email: bayliss@abramsbayliss.com

> Angela N. Ellis
> 1700 New York Avenue, N.W. Suite 700
> Washington, D.C. 20006-5215
> Telephone: 202-956-7500
> Facsimile: 202-293-6330
> ellisan@sullcrom.com

Lead counsel for Petroleos De Venezuela, S.A.:

> Samuel Taylor Hirzel , II
> Heyman Enerio Gattuso & Hirzel LLP
> 300 Delaware Avenue, Suite 200
> Wilmington, DE 19801
> (302)472-7300

Email: shirzel@hegh.law

Aaron M. Nelson
Heyman Enerio Gattuso & Hirzel LLP
300 Delaware Avenue, Suite 200
Wilmington, DE 19801
302- 472-7312
Fax: 302-472-7320
Email: anelson@hegh.law

Joseph D. Pizzurro
CURTIS, MALLET-PREVOST, COLT &
MOSLE LLP
101 Park Avenue
New York, NY 10178
Telephone: 212-696-6000
jpizzurro@curtis.com


Dated: May 16, 2022
        New York, New York

_____
Alexander A. Yanos
ALSTON & BIRD, LLP
90 Park Avenue, 15th Floor
New York, NY 10016-1387
212-210-9400
alex.yanos@alston.com
*Counsel for Northrop Grumman Ship
Systems, Inc., f/k/a Ingalls
Shipbuilding, Inc.
and now known as Huntington Ingalls
Incorporated*

# ADDENDUM

## <u>TABLE OF CONTENTS</u>

**Exhibit A:** March 2, 2022 Opinion, *Northrop Grumman Ship Sys. v. Ministry of Def. of the Rep. of Venez.*, No. 1:20-mc-257-LPS, D.I. 58

**Exhibit B:** March 2, 2022 Order, *Northrop Grumman Ship Sys. v. Ministry of Def. of the Rep. of Venez.*, No. 1:20-mc-257-LPS, D.I. 59

**Exhibit C:** March 9, 2022 Joint Status Report, *Northrop Grumman Ship Sys. v. Ministry of Def. of the Rep. of Venez.*, No. 1:20-mc-257-LPS, D.I. 60

**Exhibit D:** May 4, 2022 Memorandum Order Certifying Questions For Interlocutory Review, *Northrop Grumman Ship Sys. v. Ministry of Def. of the Rep. of Venez.*, No. 1:20-mc-257-LPS, D.I. 62

# EXHIBIT A

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| OI EUROPEAN GROUP B.V., | |
| Plaintiff, | |
| v. | Misc. No. 19-290-LPS |
| BOLIVARIAN REPUBLIC OF VENEZUELA, | |
| Defendant. | |
| PHILLIPS PETROLEUM COMPANY VENEZUELA LIMITED and CONOCOPHILLIPS PETROZUATA B.V., | |
| Plaintiffs, | |
| v. | Misc. No. 19-342-LPS |
| PETRÓLEOS DE VENEZUELA, S.A., CORPOGUANIPA, S.A. and PDVSA PETRÓLEO, S.A., | |
| Defendants. | |
| NORTHROP GRUMMAN SHIP SYSTEMS, INC., | |
| Plaintiff, | |
| v. | Misc. No. 20-257-LPS |
| THE MINISTRY OF DEFENSE OF THE REPUBLIC OF VENEZUELA, | |
| Defendant. | |
| ACL1 INVESTMENTS LTD., ACL2 INVESTMENTS LTD., and LDO (CAYMAN) XVIII LTD., | |
| Plaintiff, | |
| v. | Misc. No. 21-46-LPS |
| BOLIVARIAN REPUBLIC OF VENEZUELA, | |
| Defendant. | |

Jody C. Barillare and Kelsey A. Bomar, MORGAN, LEWIS & BOCKIUS LLP, Wilmington, DE

Sabin Willett, Jonathan Albano, and Christopher L. Carter, MORGAN, LEWIS & BOCKIUS LLP, Boston, MA

Edward H. Davis, Jr., Fernando J. Menendez, and Cristina Vicens Beard, SEQUOR LAW, P.A., Miami, FL

    Attorneys for OI European Group B.V.


Garrett B. Moritz, ROSS ARONSTAM & MORITZ LLP, Wilmington, DE

Michael S. Kim, Marcus J. Green, and Josef M. Klazen, KOBRE & KIM LLP, New York, NY

Michael Sherwin, KOBRE & KIM LLP, Washington, DC

    Attorneys for Phillips Petroleum Co. Venezuela Ltd. and ConocoPhillips Petrozuata B.V.


Laura Davis Jones and Peter J. Keane, PACHULSKI STANG ZIEHL & JONES LLP, Wilmington, DE

Alexander A. Yanos, Rajat Rana, and Robert Poole, ALSTON & BIRD, LLP, New York, NY

    Attorneys for Northrop Grumman Ship Systems, Inc.


Marie M. Degnan, ASHBY & GEDDES, Wilmington, DE

Joshua S. Bolian and Keane A. Barger, RILEY WARNOCK & JACOBSON, PLC, Nashville, TN

    Attorneys for ACL1 Investments Ltd., ACL2 Investments Ltd., and LDO (Cayman) XVIII Ltd.


A. Thompson Bayliss and Stephen C. Childs, ABRAMS & BAYLISS LLP, Wilmington, DE

Sergio J. Galvis, Joseph E. Neuhaus, James L. Bromley, SULLIVAN & CROMWELL LLP, New York, NY

Angela N. Ellis, SULLIVAN & CROMWELL LLP, Washington, DC

    Attorneys for Bolivarian Republic of Venezuela

Samuel Taylor Hirzel, II, Aaron M. Nelson, and Jamie L. Brown, HEYMAN ENERIO GATTUSO & HIRZEL LLP, Wilmington, DE

Joseph D. Pizzurro, Julia B. Mosse, Kevin A. Meehan, and Juan O. Perla, CURTIS, MALLET-PROVOST, COLT & MOSLE LLP, New York, NY

    Attorneys for Petróleos de Venezuela, S.A.

Samuel Taylor Hirzel, II and Aaron M. Nelson, HEYMAN ENERIO GATTUSO & HIRZEL LLP, Wilmington, DE

Joseph D. Pizzurro, Julia B. Mosse, Kevin A. Meehan, and Juan O. Perla, CURTIS, MALLET-PROVOST, COLT & MOSLE LLP, New York, NY

    Attorneys for Corpoguanipa, S.A. and PDVSA Petróleo, S.A.

## **OPINION**

March 2, 2022
Wilmington, Delaware

**STARK, U.S. District Judge:**

Pending before the Court are various motions brought by creditors who hold judgments against the Bolivarian Republic of Venezuela ("Venezuela" or the "Republic") or other entities of the Venezuelan government. Each judgment creditor seeks, through these actions, a writ of attachment *fieri facias* ("*fi. fa.*") for shares of PDV Holding, Inc. (the "PDVH Shares") held by the Republic's state-owned oil company, Petróleos de Venezuela, S.A. ("PDVSA").[1] Although the Republic and PDVSA are legally distinct entities, judgment creditors with judgments against the Republic have sought to collect on those judgments by attaching PDVSA's property in this District, under the theory that PDVSA is the Republic's alter ego.

Under certain executive orders and a sanctions regime implemented by the U.S. Treasury Department's Office of Foreign Assets Control ("OFAC"), the PDVH Shares are "blocked property," so transactions involving those shares are prohibited. Thus, each judgment creditor admits that any writ of attachment for the PDVH Shares should not be served until either OFAC grants it a specific license to obtain an interest in the PDVH Shares or the sanctions regime changes and the PDVH Shares are no longer blocked. One common legal question in all four of these cases is whether the OFAC sanctions should stop the Court from ordering the narrow relief requested by the judgment creditors in their pending motions. For the reasons explained below, the Court concludes that the OFAC sanctions do not prevent it from authorizing the eventual issuance of a writ attachment, conditioned on some form of approval by the Executive Branch.

---

[1] PDVSA wholly owns PDVH, which wholly owns CITGO Holding, Inc., which in turn wholly owns CITGO Petroleum Corp. ("CITGO"). In practical effect, then, the dispute over the PDVH Shares may be viewed as a dispute over ownership interests in CITGO.

## BACKGROUND

### I.     Parties And Cases

#### A.     OIEG

In 2011, OI European Group B.V. ("OIEG") commenced an arbitration against the

Republic.   (Misc. No. 19-290 D.I. 49 at 2)   In 2015, the arbitral tribunal concluded that the

Republic, under the regime of former President Hugo Chávez, had expropriated OIEG's interests

in glass container factories.   (*Id.*)   The tribunal issued a decision in OIEG's favor and awarded

OIEG over $370 million, plus costs, expenses, and interest.   (*Id.* at 2-3)   In 2019, the U.S.

District Court for the District of Columbia confirmed the arbitral award and entered judgment for

OIEG against the Republic.   (*See id.* at 3)   Later that year, OIEG registered its judgment with

this Court.   (*Id.*)   By OIEG's calculation, the total amount of its award now stands at over $583

million.   (*Id.*)   OIEG seeks to collect on its judgment by attaching the PDVH Shares.   At this

point in the process, OIEG specifically asks the Court to "enter an order authorizing the issuance

of . . . a writ of attachment *fieri facias* . . . provided that such issuance and service of the writ

shall be conditioned upon this Court's receipt of evidence that [OFAC] has (x) authorized such

issuance and service, or (y) removed the prohibition and sanctions currently in place that prevent

the issuance and service of such a writ."   (D.I. 48 at 1-2; D.I. 48-3; *see also* D.I. 102 at 2)[2]

---

[2] OIEG has occasionally framed its requested relief differently.   (*See* Misc. No. 19-290 D.I. 96 at 3) ("OIEG requests that this Court authorize the issuance of a writ, with service not to be made until and unless OFAC grants a license or lifts the current sanctions, or alternatively declare OIEG's right to issuance of a writ upon the grant of a license.")   Based on the language in OIEG's renewed motion for a writ of attachment (D.I. 48 at 1-2), the proposed order (D.I. 48-3), and OIEG's most recent articulation of the requested relief (D.I. 102 at 2), the Court understands that OIEG is not actually seeking issuance of the writ at this time.

**B.     Huntington Ingalls**

Northrop Grumman Ship Systems, Inc., now known as Huntington Ingalls Inc.

("Huntington Ingalls"), commenced an arbitration against the Republic's Ministry of Defense

after the Republic failed to pay Huntington Ingalls for repairing two Venezuelan warships.   (*See*

Misc. No. 20-257 D.I. 26 at 1 & n.1)   In 2018, the arbitral tribunal sided with Huntington

Ingalls, awarding it over $128 million.   (*Id.* at 4)   Huntington Ingalls filed a motion in the U.S.

District Court for the Southern District of Mississippi seeking to recognize and enforce its

arbitral award, and that court granted the motion.   (*Id.*)   In July 2020, Huntington Ingalls

registered its judgment in this Court.   (*Id.* at 5)   Today, Huntington Ingalls' judgment is

apparently worth over $137 million.   (*See id.* at 4-5)   Like OIEG, Huntington Ingalls seeks to

collect on its judgment by attaching the PDVH Shares and obtaining a portion of the proceeds

from a forced judicial sale.   Given the sanctions regime, Huntington Ingalls seeks an order that

the Clerk of this Court may issue a writ of attachment for the PDVH Shares "upon evidence that

[OFAC] has either (i) authorized the issuance and service of such a writ or (ii) otherwise

removed or modified the relevant sanctions currently prohibiting the transfer of" the PDVH

Shares.   (D.I. 54-1 at 1-2) (emphasis omitted)

**C.     ACL**

ACL1 Investments Ltd. ("ACL1"), ACL2 Investments Ltd. ("ACL2"), and LDO Cayman

XVIII Ltd. ("LDO") (collectively, "ACL") own bonds issued by the Republic.   (Misc. No. 21-46

D.I. 3 at 10)   Because the Republic stopped paying principal and interest on the bonds in

January 2018, the bonds' full principal became due in December 2018.   (*Id.*)   In September

2019, ACL1 and ACL2 sued the Republic in the U.S. District Court for the Southern District of

New York. (*Id.*) LDO eventually joined that case. (*Id.*) At the end of 2020, the Republic

stipulated to a judgment against it worth over $118 million. (*Id.*) ACL registered its judgment

in this Court but also agreed not to enforce that judgment until October 23, 2021. (*Id.*) Now

that the agreed-upon date has passed, ACL seeks to collect on its judgment by attaching the

PDVH Shares. ACL requests an order with the following language: "upon this Court's receipt

of evidence that [OFAC] has either authorized the issuance and service of such writ or removed

the prohibition and sanctions currently in place that prevent the issuance and service of such a

writ, the Clerk of this Court . . . shall issue that writ." (D.I. 31 at 1) The proposed order also

would provide that "the U.S. Marshals Service is authorized, upon receipt of the issued writ, to

serve" that writ on PDVH. (*Id.* at 2)

### D.  ConocoPhillips

According to Phillips Petroleum Company Venezuela Limited and ConocoPhillips

Petrozuata B.V. (together, "ConocoPhillips"), the Republic and PDVSA "confiscated and

nationalized ConocoPhillips' interests in major projects in the Orinoco Oil Belt." (Misc. No.

19-342 D.I. 3 at 1) ConocoPhillips commenced an arbitration against the Republic, PDVSA,

and various subsidiaries of PDVSA. (*Id.*) The arbitral tribunal awarded ConocoPhillips nearly

$2 billion. (*Id.*) In August 2018, the arbitral award was confirmed in the U.S. District Court

for the Southern District of New York. (*Id.*) Notably, unlike the other judgment creditors,

ConocoPhillips holds a judgment directly against PDVSA, meaning that ConocoPhillips is not

required to show that PDVSA is the Republic's alter ego. (*See id.* at 2-3) The parties entered

into a settlement agreement, and PDVSA paid ConocoPhillips a portion of the judgment. (*Id.* at

1-2) PDVSA later breached its obligations under the settlement agreement, causing

4

ConocoPhillips to seek to enforce the judgment and collect the rest of its award, as the settlement agreement allows. (*Id.* at 2) Thus, ConocoPhillips seeks an order "authorizing the issuance of the *fi. fa.* writ, with subsequent delivery and service conditioned on OFAC authorization (or the lifting of sanctions)." (D.I. 37 at 5) Unlike the other judgment creditors, who suggest there should be conditions on both the issuance and service of their requested writs, ConocoPhillips seeks the immediate issuance of its writ with conditions only on service.

## II.    Sanctions Regime

### A.    Executive Orders

In March 2015, the President issued an executive order ("E.O.") declaring a national emergency under the International Emergency Economic Powers Act ("IEEPA"), 50 U.S.C. § 1701 *et seq.*, regarding the humanitarian crisis in Venezuela. *See generally* E.O. 13,692, 80 Fed. Reg. 12,747 (Mar. 8, 2015). For present purposes, two additional executive orders are especially relevant.[3] Under E.O. 13,850, 83 Fed. Reg. 55,243 (Nov. 1, 2018), certain Venezuelan property in the United States, and interests in that property, "are blocked and may not be transferred, paid, exported, withdrawn, or otherwise dealt in." § 1(a). This prohibition does not apply "to the extent provided by statutes, or in regulations, orders, directives, or licenses that may be issued pursuant to" the executive order. *Id.* § 1(b). Similarly, under E.O. 13,884,

---

[3] The President has issued several other executive orders regarding the humanitarian crisis in Venezuela. *See generally* E.O. 13,808 § 1(b), 82 Fed. Reg. 41,155 (Aug. 24, 2017) (prohibiting "[t]he purchase, directly or indirectly, by a United States person or within the United States, of securities from the Government of Venezuela"); E.O. 13,835 § 1(a)(iii), 83 Fed. Reg. 24,001 (May 21, 2018) (prohibiting transactions related to "the sale, transfer, assignment, or pledging as collateral by the Government of Venezuela of any equity interest in which the Government of Venezuela has a 50 percent or greater ownership interest"); E.O. 13,857 § 1, 84 Fed. Reg. 509 (Jan. 25, 2019) (defining "Government of Venezuela" to include PDVSA).

84 Fed. Reg. 38,843 (Aug. 5, 2019), "[a]ll property and interests in the property of the

Government of Venezuela that are in the United States . . . are blocked and may not be

transferred, paid, exported, withdrawn, or otherwise dealt in." § 1(a). Like E.O. 13,850, the

restrictions in E.O. 13,884 do not apply if a statute, regulation, order, directive, or license states

otherwise. *Id.* § 1(c).[4]

## B. OFAC Regulations

OFAC promulgated a regulation under which "[a]ll transactions prohibited pursuant to"

E.O. 13,692 or any other executive orders related to the national emergency involving Venezuela

"are prohibited." 31 C.F.R. § 591.201. A related regulation similarly prohibits "the

enforcement of any lien, judgment, arbitral award, decree, or other order through execution,

garnishment, or other judicial process purporting to transfer or otherwise alter or affect property

or interests in property blocked pursuant to § 591.201," unless OFAC has granted a specific

license for that conduct. *Id.* § 591.407; *see also id.* § 591.506(c) (similar).[5]

Additional regulations provide definitions for certain terms used in the prohibitions.

"Transfer" means "any actual or purported act or transaction" if the "purpose, intent, or effect" is

---

[4] The Court is releasing another Opinion today that contains additional discussion of the
relevant executive orders. *See generally Crystallex Int'l Corp. v. Bolivarian Republic of
Venezuela*, Misc. No. 17-151 D.I. 443 at 18-25 (D. Del. Mar. 2, 2022) (D.I. 443) ("*Crystallex
Sanctions Op.*").

[5] In Misc. No. 17-151, Crystallex was able to attach the PDVH Shares because
Venezuelan property in the United States had not yet been blocked when the Court granted relief
to Crystallex. The OFAC regulations outlined in this section of the Opinion were promulgated
after Crystallex obtained its writ of attachment and apply prospectively to any additional writs of
attachment that may issue.

6

to "create, surrender, release, convey, transfer, or alter, directly or indirectly, any right, remedy, power, privilege, or interest with respect to any property." *Id.* § 591.310. That definitional provision also states that "transfer" may include, among other things, "the issuance, docketing, or filing of, or levy of or under, any judgment, decree, attachment, injunction, execution, or other judicial or administrative process or order, or the service of any garnishment." *Id.* Moreover, "property" and "property interest" are broadly defined to include any "property, real, personal, or mixed, tangible or intangible, or interest or interests therein, present, future, or contingent." *Id.* § 591.309.

Any transfers of blocked property that occur in violation of OFAC regulations will be deemed to have no legal effect. For example, one provision states: "[a]ny transfer . . . that is in violation of any provision of this part . . . and that involves any property or interest in property blocked pursuant to § 591.201, is null and void and shall not be the basis for the assertion or recognition of any interest in or right, remedy, power, or privilege with respect to such property or property interest." *Id.* § 591.202(a). Another provision is specifically directed to judicial orders: "Unless licensed pursuant to this part, any attachment, judgment, decree, lien, execution, garnishment, or other judicial process is null and void with respect to any property and interests in property blocked pursuant to § 591.201." *Id.* § 591.202(e).[6]

### C. FAQ 808

In December 2019, OFAC published guidance in the form of an answer to the following frequently asked question ("FAQ"):

---

[6] *See also generally Crystallex Sanctions Op.* at 21-38.

[Q.]  808.  Do I need a specific license from OFAC to file a suit in U.S. court against a person designated or blocked pursuant to Venezuela-related sanctions?  Does a U.S. court, or its personnel, need a specific license from OFAC to hear such a case?

[A.]  No.  A specific license from OFAC is not ordinarily required to initiate or continue U.S. legal proceedings against a person designated or blocked pursuant to OFAC's Venezuela sanctions program, or for a U.S. court, or its personnel, to hear such a case.  However, a specific license from OFAC is required for the entry into a settlement agreement or the enforcement of any lien, judgment, or other order through execution, garnishment, or other judicial process purporting to transfer or otherwise alter or affect property or interest in property blocked pursuant to the Venezuela Sanctions Regulations (31 C.F.R. Part 591).  This includes the purported creation or perfection of any legal or equitable interests (including contingent or inchoate interests) in blocked property.  While terminology may vary in different jurisdictions and proceedings, *a specific license from OFAC would be required for measures such as . . . [a]ttaching.*

(Misc. No. 19-290 D.I. 50-1 Ex. 25) (emphasis added) (citing 31 C.F.R. §§ 591.309, 591.310, 591.407, and 591.506)

## DISCUSSION

### I.    The Judgment Creditors Present Issues That Are Ripe For Adjudication

PDVSA argues that the issues in the judgment creditors' attachment motions are not ripe because those motions are contingent on possible future events, such as OFAC's issuance of a specific license.  Therefore, in PDVSA's view, the Court lacks jurisdiction.  (*See, e.g.*, Misc. No. 19-290 D.I. 65 at 30)  The Court concludes that the issues before it are ripe and that it has jurisdiction.

PDVSA does not account for all the factors affecting ripeness.  At a high level, the ripeness inquiry involves evaluating "the *fitness* of the issues for judicial decision and the

8

*hardship* to the parties of withholding court consideration." *Abbott Labs. v. Gardner*, 387 U.S. 136, 149 (1967) (emphasis added), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977). More specifically, the "fitness" prong of this analysis considers multiple factors: (1) "whether the issue is purely legal (as against factual)," (2) "the degree to which the challenged action is final," (3) "whether the claim involves uncertain and contingent events that may not occur as anticipated or at all," (4) "the extent to which further factual development would aid decision," and (5) "whether the parties to the action are sufficiently adverse." *NE Hub Partners, L.P. v. CNG Transmission Corp.*, 239 F.3d 333, 341 n.8 (3d Cir. 2001). The "hardship" prong "focuses on whether a plaintiff faces a direct and immediate dilemma, such that lack of review will put it to costly choices." *Id.*[7]

 In the instant cases addressed in this Opinion, the applicable factors demonstrate that the issues before the Court are ripe for adjudication. With respect to the "hardship" prong, the judgment creditors are faced with a dilemma: if they wait for OFAC to provide additional guidance on how far the attachment process can or should go under the current sanctions, OFAC may decide not to provide any guidance at all, leaving the judgment creditors in legal limbo. That position would be costly for the judgment creditors, who all hold substantial judgments

---

 [7] In the context of declaratory judgments, the Third Circuit generally employs a "threefold rubric" to analyze ripeness. *NE Hub Partners*, 239 F.3d at 342. The considerations in that rubric are (1) "the adversity of the parties' interests," (2) "the probable conclusiveness of a judgment," and (3) "the practical utility to the parties of rendering a judgment." *Id.*; *see also Step-Saver Data Sys., Inc. v. Wyse Tech.*, 912 F.2d 643, 647 (3d Cir. 1990). That rubric is just another way to organize the relevant factors. *See NE Hub Partners*, 239 F.3d at 342 n.9. Regardless of how the factors are grouped, the ripeness inquiry is a flexible one. *See id.*

against the Republic and/or PDVSA and would likely have to wait even longer (than they otherwise would have to wait) to collect the money owed to them.

The "fitness" prong also favors ripeness. The Court is focused on the application of the OFAC sanctions to a largely undisputed set of facts, leaving the Court to decide purely legal issues. (*See, e.g.*, Misc. No. 19-342 D.I. 37 at 1) ("[N]one of the facts are contested.") Further factual development would not aid the Court's decision on the OFAC issues. Moreover, PDVSA ignores that both sides are indisputably adverse to each other. To be sure, PDVSA is right that the judgment creditors ultimately seek relief that is contingent upon future conduct by a third party (i.e., the Executive Branch). (*See* Misc. No. 21-46 D.I. 22 at 33) But the adversity of the parties and their desired outcomes in this litigation are not contingent on anyone or anything else. The judgment creditors are asking this Court to provide relief *now* in the form of orders that will leave them better prepared to perfect interests in the PDVH Shares at the appropriate time. PDVSA opposes this relief and, more broadly, the Republic does not want to pay the judgments (unless, perhaps, there is a global resolution of all the Republic's debt).[8]

The cases cited by PDVSA are inapposite. PDVSA starts with the proposition that "'[a] dispute is not ripe for judicial determination if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all.'" (Misc. No. 21-46 D.I. 22 at 33) (quoting

___

[8] *See, e.g.*, Misc. No. 19-290 D.I. 65 at 25 (PDVSA referring to Guaidó administration's "plan to globally restructure Venezuela's and PDVSA's debts"); D.I. 50-1 Ex. 8 (describing Guaidó administration's policies regarding "the imminent renegotiation of foreign currency-denominated private claims against the Republic and the Venezuelan public sector"); *see also Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, 932 F.3d 126, 147-48 (3d Cir. 2019) (noting that, in 2017, former President Maduro "decreed that Venezuela would restructure the external debt of both Venezuela and PDVSA").

10

*Sherwin-Williams Co. v. Cnty. of Del.*, 968 F.3d 264, 272 (3d Cir. 2020)) PDVSA's argument conflates whether a ***dispute*** is contingent with whether the requested ***relief*** involves some kind of contingency. The disputes between the judgment creditors and the Republic and/or PDVSA exist regardless of what the Executive Branch does or does not do. OFAC's grant of a specific license would not obviate the core disputes among these parties; a license would only allow the parties to proceed to the next step of resolving that dispute.

In another case on which PDVSA relies, *Republic of Panama v. Lexdale, Inc.*, 804 F. Supp. 1521, 1522 (S.D. Fla. 1992), Lexdale sued Air Panama for damaging an aircraft that Lexdale had leased to the airline, and Lexdale eventually obtained a default judgment. In the meantime, and before Lexdale could attempt to enforce its judgment against Air Panama, the Executive Branch blocked Panamanian property in the United States. *See id.* The Republic of Panama brought suit against Lexdale, seeking a declaration that it was not responsible to pay the default judgment against Air Panama. *See id.* at 1522-23. The district court dismissed the Republic of Panama's action as unripe because it was unclear whether Lexdale would ever be able to seek to enforce the default judgment; it had not yet even threatened or commenced such an action. *See id.* at 1523-24. Here, by contrast, the judgment creditors do not merely hold judgments against Venezuela and/or PDVSA. They have already commenced judgment enforcement actions in this Court. (*See* Misc. No. 19-290 D.I. 102 at 6-7 ("OIEG is seeking to satisfy its judgment against specific property of Venezuela's alter ego – there is nothing speculative about its extant claims."); Misc. No. 21-46 D.I. 29 at 22 n.11) Thus, the circumstances presented here are not as speculative as those in *Lexdale*.

11

Hence, the Court concludes that the judgment creditors' motions present issues that are

ripe for this Court's review, and this Court has jurisdiction.[9]

## II. Nothing Prevents The Court From Authorizing The Eventual Issuance Of A Writ Of Attachment

Under the applicable executive orders, the PDVH Shares "are blocked and may not be

transferred, paid, exported, withdrawn, or otherwise dealt in." E.O. 13,850 § 1(a); E.O. 13,884

§ 1(a). By the executive orders' own terms, however, they do not apply "to the extent provided

by statutes, or in regulations, orders, directives, or *licenses* that may be issued." E.O. 13,850

§ 1(b); E.O. 13,884 § 1(c) (emphasis added). Here, all but one of the judgment creditors are

asking for an order authorizing the eventual issuance of a writ of attachment, conditioned on

either OFAC's grant of a specific license or material changes to the sanctions regime (the

"requested relief").[10] The requested relief, therefore, has no impact on the PDVH Shares unless

and until the Executive Branch takes action. If the sanctions regime remains in its current form

---

[9] PDVSA suggests that the Court may not have jurisdiction under Article III of the U.S. Constitution to reach the issue of OFAC sanctions. (Misc. No. 19-290 D.I. 95 at 2 n.1; Misc. No. 20-257 D.I. 51 at 2 n.1) PDVSA's Article III arguments are vague, but, for the reasons explained above, the Court concludes that the judgment creditors present live cases or controversies within the meaning of Article III. It may also be that in the instant post-judgment posture, a live case or controversy is not required. *See generally Peacock v. Thomas*, 516 U.S. 349, 356-57 (1996) (approving "exercise of ancillary jurisdiction" in some circumstances "to assist in the protection and enforcement of federal judgments"). The Court need not decide that issue. Because the Court has jurisdiction under Article III, PDVSA agrees that the Court may consider the OFAC issues before turning to the alter ego analysis under the Foreign Sovereign Immunities Act. (*See* Misc. No. 19-290 D.I. 95 at 2 n.1; Misc. No. 20-257 D.I. 51 at 2 n.1)

[10] To be precise, OIEG, Huntington Ingalls, and ACL are seeking the requested relief described here. ConocoPhillips asks for slightly more relief: the immediate issuance of a writ of attachment. In this section of the Opinion, the Court focuses on the relief requested by OIEG, Huntington Ingalls, and ACL. The Court specifically addresses ConocoPhillips' request in the next section.

and OFAC denies the judgment creditors' license requests, PDVSA will retain full ownership of the PDVH Shares (subject to any preexisting liens), leaving the status quo in place. Accordingly, the judgment creditors' requested relief does not contravene the plain text of E.O. 13,850 and E.O. 13,884, which contain an exception for actions taken in accordance with OFAC licenses.

Turning to the OFAC regulations, PDVSA's argument against the requested relief starts with the premise that 31 C.F.R. § 591.407 broadly prohibits any "judicial process purporting to transfer or otherwise alter or affect property or interests in [blocked] property." (*See, e.g.*, Misc. No. 21-46 D.I. 22 at 30) In PDVSA's view, when that prohibition is combined with the broad definitions of "transfer" and "property" in §§ 591.309-10, the regulations effectively prohibit any proceedings involving the PDVH Shares from moving forward. (*See, e.g.*, Misc. No. 19-342 D.I. 33 at 12) ("OFAC regulations broadly prohibit any conceivable steps toward enforcing a judgment against blocked property . . . .") The Court disagrees with PDVSA's overly expansive interpretation of the regulations.

"Transfer" is defined as any "act or transaction" having the "purpose, intent, or effect" to "create, surrender, release, convey, transfer, or alter, directly or indirectly, any right, remedy, power, privilege, or interest" with respect to blocked property. 31 C.F.R. § 591.310. Under this definition, authorizing the *eventual* issuance of a writ of attachment does not involve any "transfer." Rather, only the actual, eventual encumbering of the PDVH Shares with a lien would "create, surrender, release, convey, transfer, or alter" any right or interest in those shares. (*See, e.g.*, Misc. No. 19-342 D.I. 35 at 3) (citing *Nat'l Oil Corp. v. Libyan Sun Oil Co.*, 733 F. Supp. 800, 809-12 (D. Del. 1990)) This interpretation is consistent with the statutory provisions

13

regarding what the President may control. *See* 50 U.S.C. § 1702(a)(1)(B) (granting President

certain powers with respect to "property in which any foreign country or a national thereof has

any interest"); *see also Nat'l Oil*, 733 F. Supp. at 812 ("[T]he Court concludes that in this case

the President does not have the power to prohibit the mere entry of judgment by this Court."). If

the Court grants the requested relief, no attachment will become effective and no lien will be

created ***unless and until*** OFAC grants a specific license or the sanctions regime materially

changes. Thus, the requested relief does not come within the definition of "transfer," as it does

not have the prohibited "purpose, intent, or effect." It would not affect rights in blocked

property until that property is no longer blocked.

 The regulations need not, and should not, be read to sweep as broadly as PDVSA

contends. Instead, in the Court's view, the sanctions regime bars "the creation . . . of any lien"

and the other acts called out in § 591.310 that have the imminent or actual "purpose, intent, or

effect" of altering blocked property rights without an OFAC license. The requested relief does

not do so. Notably, the judgment creditors admit that the requested relief will not establish

priority in the PDVH Shares. (*E.g.*, Misc. No. 19-290 D.I. 92 (Apr. 30, 2021 Tr.) at 170; D.I.

102 at 4 n.6; *see also* Misc. No. 19-342 D.I. 41 (June 9, 2021 Tr.) at 52, 54-55 (ConocoPhillips

conceding that even issuance of writ of attachment does not establish priority)) The lack of any

priority benefit underscores that the requested relief does not amount to a prohibited transfer or

otherwise alter rights in the PDVH Shares.[11]

---

[11] Nonetheless, as ConocoPhillips explains, the relief sought by the judgment creditors "has genuine utility because with it, [each judgment creditor] will be in a position to perfect a judgment lien against the shares of PDVH once authorized by OFAC or when sanctions are

14

Another regulation defines "interests" to include interests "of any nature whatsoever, direct or indirect." 31 C.F.R. § 591.305. Relatedly, 31 C.F.R. § 591.309 defines "property" to include "future[] or contingent" property interests. Based on these provisions, PDVSA contends that authorizing the eventual issuance of a writ of attachment would establish a prohibited contingent interest in blocked property. (*See, e.g.*, Misc. No. 21-46 D.I. 22 at 31-32) The Court disagrees. In the Court's view, the definitions of "interests" and "property" are intended to encompass rights that could mature into present property interests **without** a specific license from OFAC. One example of such an interest is a contingent reversionary interest in funds that would go to a foreign government unless a contracting party demonstrates tender of goods. *See, e.g.*, *Consarc Corp. v. Iraqi Ministry*, 27 F.3d 695, 702 (D.C. Cir. 1994) (applying Iraqi sanctions to letters of credit). Contrary to PDVSA's argument, therefore, the Court's interpretation of the sanctions regime does not render superfluous the portions of the definitions emphasized by PDVSA. Rather, those portions of the definitions encompass certain transactions that might otherwise evade OFAC's scrutiny. Authorizing the eventual issuance of a writ of attachment contingent on an OFAC license or material modification of the sanctions does not establish a "contingent" property interest prohibited by the regulations.[12]

---

lifted, without the need for further proceedings before the Court." (Misc. No. 19-342 D.I. 37 at 2) (emphasis omitted)

[12] Framed differently, the Court agrees with ACL that the judgment creditors are seeking "'merely an expectancy and not a property right.'" (Misc. No. 21-46 D.I. 3 at 18) (quoting *In re Fin. Oversight & Mgmt. Bd. for P.R.*, 948 F.3d 457, 468 (1st Cir. 2020)) The judgment creditors have no control over whether the Executive Branch will permit them to obtain any stake in the PDVH Shares. *See, e.g.*, *In re Majestic Star Casino, LLC*, 716 F.3d 736, 756-57 (3d Cir. 2013) (explaining that company's status as "S" corporation is not property interest because that status may be revoked "at will").

15

Under the sanctions regime, an action that is conditioned on OFAC's approval does not amount to a "contingent" property interest.   In the *Crystallex* case, PDVSA points to an enforcement action in which OFAC arguably took the opposite view.   (*See* Misc. No. 17-151 D.I. 419 at 4)   In that enforcement action, OFAC concluded that Aero Sky violated the Iranian sanctions regime when it entered into a memorandum of understanding with Mahan Air, an Iranian commercial airline company, even though the agreement was "contingent, in part, upon Mahan Air being removed" from OFAC's list of specially designated nationals and blocked persons.   (D.I. 420-1)   Based on the Court's reading of the Venezuelan sanctions, as explained above, the Court will not defer to OFAC's interpretation of different sanctions in an unrelated case, particularly when the accused violator in that case never had a chance to defend itself before the agency.   *See generally Kisor v. Wilkie*, 139 S. Ct. 2400, 2415 (2019) (holding that "a court should not afford . . . deference unless the regulation is genuinely ambiguous").

Following PDVSA's arguments to their full extent would lead to illogical consequences. For example, if PDVSA's interpretation of the sanctions were correct, then the Court's issuance of the instant Opinion could arguably be considered an action that alters rights in the PDVH Shares (because it is a necessary step toward the judgment creditors collecting on their judgments), even without the Court entering any corresponding order.   Yet OFAC has never expressed a belief that its regulations prevent this Court from proceeding in these cases as it deems fit.   Indeed, the United States has told this Court that it "can do whatever it wants." (Misc. No. 17-151 D.I. 226 at 105)   And for good reason: the Executive Branch's attempted restriction of this Court's ability to enforce its judgments would raise serious separation-of-powers concerns.   *See generally Peacock*, 516 U.S. at 356 (noting courts' "inherent power to

16

enforce [their] judgments"); *Dean Witter Reynolds, Inc. v. Fernandez*, 741 F.2d 355, 360 n.16 (11th Cir. 1984) ("Simply because Congress empowers the Executive to forbid certain transfers of property and he [or she] acts thereon does not imply that the jurisdiction of the federal courts is dependent upon the issuance of a license by the Treasury Department.").[13]

Even if authorizing the eventual issuance of a writ of attachment might somehow be considered to violate the sanctions regime, OFAC may still validate that action by later granting a specific license. *See* 31 C.F.R. § 591.202(c). This potentiality makes the Court far less concerned than PDVSA that whatever the Court accomplishes now might later be considered "null and void." (*E.g.*, Misc. No. 19-342 D.I. 33 at 14; Misc. No. 21-46 D.I. 22 at 32; *see also* 31 C.F.R. § 591.202(a), (e)) The PDVH Shares will not be transferred without a judgment creditor obtaining a specific OFAC license or the sanctions regime changing. While the Court is not eager to encourage further litigation about the validity of steps taken during this litigation, the Court will not be deterred from fulfilling its judicial function at this time.

Finally, PDVSA relies on FAQ 808 as further support for its broad interpretation of the OFAC regulations. That informal guidance document states that "a specific license from OFAC is required for . . . the enforcement of any lien, judgment, or other order through execution, garnishment, or other judicial process purporting to transfer or otherwise alter or affect property

---

[13] For similar reasons, the Court concludes that no OFAC license is required before it may issue findings of fact regarding whether PDVSA is the Republic's alter ego. (*See, e.g.*, Misc. No. 19-290 D.I. 102 at 2 n.3 ("An alter ego finding does not change ownership of the property; it simply recognizes the true state of affairs.") (emphasis omitted); *see also* Misc. No. 20-257 D.I. 54 at 6-7) As explained below, the Court will not be making any alter ego findings at this time in the *OIEG*, *Huntington Ingalls*, and *ACL* cases, but this is based on the Court's exercise of its discretion – not due to any lack of jurisdiction or authority.

or interest in property blocked pursuant to the Venezuela Sanctions Regulations." (Misc. No. 19-290 D.I. 50-1 Ex. 25) That language in FAQ 808 tracks the language of the regulations, so the Court's analysis of the regulations applies with equal force to FAQ 808. The FAQ goes on to state that prohibited transfers may include the "purported creation or perfection of any legal or equitable interests (including contingent or inchoate interests) in blocked property." (*Id.*) Again, as already explained, authorizing the eventual issuance of a writ of attachment does not create or perfect any interest in the PDVH Shares, which remain PDVSA's property unless and until OFAC permits otherwise. And while FAQ 808 indicates that a specific license would be required to attach any blocked property, the requested relief stops short of any attachment. *See, e.g., Casa Express Corp. v. Bolivarian Republic of Venezuela*, 492 F. Supp. 3d 222, 228 (S.D.N.Y. 2020) (explaining that parties are not prohibited from taking "legal actions that stop short of transferring control of property"). Accordingly, the Court concludes that FAQ 808 does not meaningfully bolster PDVSA's interpretation of the OFAC sanctions or preclude this Court from granting the proposed relief.[14]

In sum, the OFAC sanctions regime does not require a specific license before the Court may enter an order authorizing the eventual issuance of a writ of attachment.[15]

---

[14] Given the Court's reading of FAQ 808, the Court need not conclusively determine whether any deference is due to OFAC's statements in FAQ 808. But if FAQ 808 were read to be in tension with the Court's decision, the Court would likely conclude that no deference is due to such informal guidance. *See Kisor*, 139 S. Ct. at 2415-17; *see also Crystallex Sanctions Op.* at 25-28 (holding that OFAC's FAQ 809 does not warrant deference).

[15] PDVSA has moved to strike (Misc. No. 19-290 D.I. 99) the Declaration of John E. Smith (D.I. 97), a former Director of OFAC, which OIEG attached to its opening post-hearing brief (D.I. 96; *see also* D.I. 100, 102, 104, 105). The Court will deny PDVSA's motion as moot,

18

III.    **The Court Will Not Immediately Issue A Writ Of Attachment**

Unlike the other judgment creditors, ConocoPhillips asks not that the Court indicate it will eventually issue a writ of attachment, but, instead, to immediately issue a writ of attachment while delaying delivery and service of the writ until after OFAC grants a specific license or the sanctions regime materially changes.  (Misc. No. 19-342 D.I. 37 at 5)   The Court will not go as far as ConocoPhillips requests.

As a preliminary matter, PDVSA argues that ConocoPhillips was required to obtain an OFAC license before it could even register its judgment in this Court.   (*See* D.I. 11 at 13-14; D.I. 33 at 12-13)   The Court rejects that argument and will not vacate ConocoPhillips' registered judgment.   Separate and apart from any motion for a writ of attachment, ConocoPhillips' registration of its judgment in this Court is not connected to any specific blocked property, such as the PDVH Shares.   Because registering a judgment in this Court has no effect on any blocked property, the OFAC regulations are not implicated.   (*See* D.I. 13 at 5) ("[T]he entry of a money judgment is merely evidence of a debt and it does not alone have any property-law consequences.")   Indeed, FAQ 808 explicitly states that "[a] specific license from OFAC is not ordinarily required to initiate or continue U.S. legal proceedings against a person designated or blocked pursuant to OFAC's Venezuela sanctions program, or for a U.S. court, or its personnel, to hear such a case." (Misc. No. 19-290 D.I. 50-1 Ex. 25)   Although this case is a judgment enforcement action, not an action to determine liability, the Court discerns no persuasive reason why the procedural posture would warrant a different outcome.   *See, e.g.*, *Koch Minerals Sàrl v.*

_____

as the Court has disregarded the declaration and not relied on it or any reference to it in OIEG's post-hearing briefs.

*Bolivarian Republic of Venezuela*, 514 F. Supp. 3d 20, 44 (D.D.C. 2020) (explaining that no OFAC license is required until judgment creditor "reach[es] into PdVSA's pockets").[16]

The Court now turns to ConocoPhillips' request that a writ of attachment should issue immediately. Its argument is based on the point at which a lien on attached property is created under Delaware law. The relevant statute provides: "An execution shall not bind goods and chattels until it is delivered to the sheriff or other proper officer to be executed. An execution shall, from the time it is so delivered, bind all the goods and chattels of the defendant within the bailiwick . . . ." 10 Del. C. § 5081. In some cases, Delaware courts have explained that a lien on attached property is not actually perfected upon delivery (as the statute might suggest) but upon levy by the sheriff. *See, e.g.*, *In re Stanley's Asphalt Paving, Inc.*, 353 B.R. 63, 65 (Del. Bankr. 2006). According to ConocoPhillips, because delivery is the earliest possible time that a lien could be perfected, "there can be no dispute that the mere issuance of a *fi. fa.* writ is incapable of affecting any interest in any property." (Misc. No. 19-342 D.I. 35 at 6) (emphasis omitted) Thus, the Court need not determine at precisely which point a lien is perfected under Delaware law.

No matter when a lien is created, the Court concludes that now is not the appropriate time to issue a writ of attachment. Notably, the other judgment creditors besides ConocoPhillips all believe that any writ of attachment should not issue unless and until the Executive Branch

---

[16] PDVSA's reliance (*see, e.g.*, Misc. No. 19-342 D.I. 33 at 12; D.I. 36 at 3-4) on *Dean Witter* is not persuasive. In that case, the Eleventh Circuit recognized that Cuban sanctions forbade "only those judicial acts that transfer a property interest." *Dean Witter*, 741 F.2d at 361-62. As this Court has explained, here no property interests have yet been transferred. To the extent *Dean Witter* might be read to suggest that sanctions are implicated as soon as liability has been established in a case involving a foreign entity, *Dean Witter* is not binding on this Court.

20

permits them to move forward.   (Misc. No. 21-46 D.I. 3 at 17 (ACL conceding that "OFAC

regulations presently bar the issuance and service of a writ of attachment"); Misc. No. 19-290

D.I. 102 at 2 (OIEG explaining that it "has carefully crafted its requested relief to expressly stop

short" of implicating sanctions regime, given that "issuance and service of the requested writ

would be conditioned on OFAC's approval") (emphasis omitted); Misc. No. 20-257 D.I. 54-1 at

1-2 (Huntington Ingalls proposing relief in form of order that places conditions on issuance and

service of writ); *see also Crystallex*, 2021 WL 129803, at *8 ("[T]he current sanctions regime

does appear to block issuance of new writs of attachment on Venezuelan assets in the United

States without an OFAC license . . . ."), *appeal dismissed*, 24 F.4th 242 (3d Cir. 2022))   For the

reasons explained above, in the Court's view, issuing a writ of attachment does not necessarily

have the actual or imminent "purpose, intent, or effect" of altering rights in blocked property,

because no lien would be created until the writ is at least delivered (and perhaps not until it is

served).   So the Court does not lack the authority to grant ConocoPhillips' proposed relief.

Nevertheless, given the small difference between (i) authorizing the eventual issuance of a writ

dependent on OFAC approval and (ii) issuing the writ now with delivery and service dependent

on OFAC approval, the Court concludes that the more prudent approach is to delay issuance of

any writ of attachment until OFAC grants a specific license or the sanctions regime materially

changes.

From the perspective of judicial administration, it makes sense that ConocoPhillips and

the other judgment creditors will all have access to the same form of relief at the same point in

their judgment enforcement efforts.   The Court recognizes that because ConocoPhillips holds a

judgment directly against PDVSA, if OFAC grants a specific license or the sanctions regime

materially changes, ConocoPhillips will almost certainly be in a better position than the other judgment creditors to establish its priority in the PDVH Shares by perfecting a lien.  Unlike the other judgment creditors, ConocoPhillips will not need to demonstrate that PDVSA is the Republic's alter ego.  Thus, the Court's approach regarding the relief to be awarded at this time will not prejudice ConocoPhillips, which remains at an advantage over the other judgment creditors.[17]

Accordingly, the Court will not issue a writ of attachment in ConocoPhillips' case at this time.  But because no other obstacles prevent the Court from granting ConocoPhillips some relief (as explained further below), the Court will enter an order authorizing the eventual issuance of a writ of attachment in ConocoPhillips' case, conditioned on receipt of evidence that ConocoPhillips has obtained a specific license from OFAC or that the sanctions regime has materially changed.

## IV.    A Reasonable Amount Of Time Has Passed Since The Judgments Were Entered

Each of Huntington Ingalls, ACL, and ConocoPhillips seeks an order that a reasonable period of time has elapsed following entry of judgment in its favor.  (*See generally* Misc. No. 19-342 D.I. 3 at 7-9; Misc. No. 20-257 D.I. 4 at 9-11; Misc. No. 21-46 D.I. 3 at 18-19)[18]

---

[17] To the extent ConocoPhillips is further requesting that "the Court . . . formally add ConocoPhillips' judgment to the sale process in *Crystallex*" (Misc. No. 19-342 D.I. 35 at 7), that request is denied.  The Court has not been persuaded that ConocoPhillips' judgment should be added to the sale process in *Crystallex* unless ConocoPhillips establishes a concrete interest in the PDVH Shares, which cannot occur until ConocoPhillips obtains a specific license from OFAC or the sanctions regime materially changes.

[18] The U.S. District Court for the District of Columbia already determined that a reasonable period of time has elapsed since entry of OIEG's judgment.  (*See* Misc. No. 19-290

Because a reasonable period of time has elapsed since the entry of each judgment, the Court will enter an order to that effect.

Under the Foreign Sovereign Immunities Act, attachment of foreign property in the United States cannot occur until a court has "determined that a reasonable period of time has elapsed following the entry of judgment and the giving of any notice required." 28 U.S.C. § 1610(c). There is no precise definition or formula for determining whether a period of time is "reasonable." To make this determination, other courts have looked at several factors, including "the procedures necessary for the foreign state to pay the judgment (such as the passage of legislation), evidence that the foreign state is actively taking steps to pay the judgment, and evidence that the foreign state is attempting to evade payment of the judgment." *Ned Chartering & Trading, Inc. v. Republic of Pakistan*, 130 F. Supp. 2d 64, 67 (D.D.C. 2001).

In this case, at least 14 months have passed since entry of each judgment. Huntington Ingalls' judgment was entered over a year and a half ago, in June 2020. (Misc. No. 20-257 D.I. 1) ACL and the Republic stipulated to entry of ACL's judgment 14 months ago, in December 2020. (Misc. No. 21-46 D.I. 4-1 Ex. 37) ConocoPhillips' judgment was entered three and a half years ago, in August 2018. (*See* Misc. No. 19-342 D.I. 4-3) The Republic and PDVSA have had ample time since the entry of these judgments to pay them, but they have not done so. Rather, they have staunchly opposed the judgment creditors' collection efforts at every turn.

---

D.I. 49 at 22; *see also* D.I. 4-4) In OIEG's case, more than five months passed between entry of judgment and the D.C. District Court's finding that a reasonable period had elapsed. (D.I. 50-1 Ex. 3 at 4) Because this Court need not make another such determination with respect to OIEG's judgment, OIEG has not asked for one.

Under the circumstances presented here, the Court concludes that the periods of time that have

elapsed are more than reasonable.[19]

The Court's conclusion is further supported by similar decisions from other district

courts, which have held that even shorter periods of time are reasonable. *See, e.g.*, *Pharo Gaia*

*Fund Ltd. v. Bolivarian Republic of Venezuela*, 2021 WL 2168916, at *1 (S.D.N.Y. May 27,

2021) (seven months); *OI Eur. Grp. B.V. v. Bolivarian Republic of Venezuela*, 419 F. Supp. 3d 51,

54 (D.D.C. 2019) (five months); *Saint Gobain Performance Plastics Eur. v. Bolivarian Republic*

*of Venezuela*, 2021 WL 6644369, at *2 (D.D.C. July 13, 2021) (four months); *see also Ned*

*Chartering*, 130 F. Supp. 2d at 67 (D.D.C. 2001) (six weeks); *Karaha Bodas Co. v. Perusahaan*

*Pertambangan Minyak Dan Gas Bumi Negara*, 2002 WL 32107929, at *2 (S.D. Tex. Jan. 25,

2002) (fifty days).

PDVSA argues that a reasonable amount of time has not elapsed because the Republic

has been unable to pay the judgment creditors due to the OFAC sanctions. (Misc. No. 19-342

D.I. 11 at 15; Misc. No. 20-257 D.I. 32 at 34; Misc. No. 21-46 D.I. 22 at 35) That position is

unpersuasive. OFAC granted ConocoPhillips a license to collect payments from the Republic

pursuant to a settlement agreement. (Misc. No. 19-342 D.I. 13 at 2) If the Republic were

serious about immediately paying off its outstanding debts, it could and would have paid

ConocoPhillips pursuant to its agreement. It did not do so, and it has made no discernable

efforts to pay any of the other judgment creditors whose judgments are the subject of this

---

[19] For ACL, whose judgment was entered most recently, "[t]he period of time is
particularly reasonable . . . because it was agreed upon by Venezuela itself" when ACL and the
Republic stipulated that ACL would not seek to enforce the judgment until October 2021.
(Misc. No. 21-46 D.I. 3 at 19)

Opinion, which persuades the Court that Venezuela does not intend (at least at this time) to pay the judgments.

Regardless, the statute requires only that a reasonable amount of time has elapsed – which it has. The impact of the regulations, whatever it may have been, does not alter the plain language of the statute. *See Saint Gobain*, 2021 WL 6644369, at *3 ("[Plaintiff's] failure to obtain a proper OFAC license is . . . irrelevant to this Court's decision under § 1610(c)."); *see also id.* at *2 ("[T]he political reality in Venezuela is a factor generally outside the considerations a court should analyze when determining whether a reasonable time has elapsed since entry of judgment under § 1610(c)."); *see also Red Tree Invs., LLC v. Petróleos de Venezuela, S.A.*, 2020 WL 209290, at *3 (S.D.N.Y. Jan. 14, 2020) (denying stay request).

In sum, the Court concludes that reasonable periods of time have passed since Huntington Ingalls', ACL's, and ConocoPhillips' judgments were entered.

## V.     The Court Is Inclined To Certify Interlocutory Appeals

As noted above, today the Court is also releasing the *Crystallex Sanctions Op.*, which involves similar, yet distinct issues about the OFAC sanctions regime. In that case, Crystallex successfully attached the PDVH Shares before they became blocked. The parties in *Crystallex* dispute how far the Court may proceed toward a judicial sale of the PDVH Shares while the current OFAC sanctions remain in place. As the Court reads the OFAC sanctions, the Court may take prefatory steps toward a sale of the PDVH Shares, including: (i) entering a Sale Procedures Order, (ii) working with a Special Master to implement that order, and (iii) selecting a winning bidder. The Court will not, however, permit the sale to close, which would result in

transferring legal title to the PDVH Shares.   The Court's approach in *Crystallex* is consistent with its approach here of taking steps that fall short of issuing a writ of attachment.

The OFAC sanctions have played a prominent role in *Crystallex* and all the other cases involving judgments against the Republic and/or PDVSA.   The Court has spent a great deal of time over the past year analyzing the sanctions regime, which is complicated and presents many challenging issues for these related litigations.   The Court is confident it has reached the best decisions it possibly can, but also recognizes there is substantial ground for difference of opinion on how the sanctions apply to these cases.   If a reviewing court were to adopt an interpretation of the OFAC sanctions that differs from the Court's interpretation, that controlling legal development might effectively halt all proceedings before this Court in *Crystallex* and/or these other judgment enforcement actions.   Given that possibility, immediate appeals from the Court's orders may materially and efficiently advance this litigation by conclusively resolving how far this Court may proceed under the current OFAC sanctions regime.   Therefore, it may be appropriate for the Court to certify interlocutory appeals in these cases (and in *Crystallex*) so that the Third Circuit may consider all the cross-cutting OFAC issues at the same time, before the Court undertakes the implementation of sale procedures.   *See generally* 28 U.S.C. § 1292(b).   Thus, the Court will direct the parties in *Crystallex* and the cases that are the subject of this Opinion to provide their positions on potential interlocutory appeals.

## VI.    The Court Is Not Making Any Alter Ego Factual Findings At This Point

In April 2021, the Court presided over an extensive (remote) evidentiary proceeding in the *OIEG* and *Huntington Ingalls* cases.   At these hearings, those judgment creditors attempted to prove, by a preponderance of the evidence, that PDVSA was the Republic's alter ego as of that

26

time. *(See* Misc. No. 19-290 D.I. 49 at 23-33; Misc. No. 20-257 D.I. 26 at 9-19; *see also* Misc. No. 21-46 D.I. 3 at 10-15)[20]  The Court previously held that the relevant time at issue in connection with the alter ego determination is "the period between the filing of the motion seeking a writ of attachment and the subsequent issuance and service of that writ." *Crystallex*, 2021 WL 129803, at \*6.  If the Court certifies interlocutory appeals in *Crystallex* and these cases, a significant additional amount of time will likely pass before proceedings will continue in the instant actions in this Court.  Even though OIEG and Huntington Ingalls already had a chance in April 2021 to offer evidence regarding PDVSA's status as the Republic's alter ego at that time, another evidentiary hearing may be necessary for the Court to consider any further developments before the end of the relevant time period.  Hence, the Court is inclined to deny OIEG's, Huntington Ingalls', and ACL's pending attachment motions, PDVSA's pending motions to dismiss, and any other pending motions without prejudice, allowing any motions to be refiled once the Court has the benefit of any decisions issued as a result of the interlocutory appeals (if they occur).  In the forthcoming status report, the parties should provide their views on this approach.

---

[20] The Court is declining to make findings of fact, notwithstanding certain of the judgment creditors' efforts to make a record on which such findings could be based, because it has concluded that it should first issue its legal conclusions about the impact of the sanctions and determine whether to certify an interlocutory appeal of those conclusions.  The Court's decision to refrain, at this time, from making findings of fact is *not* due to its agreement with PDVSA that OFAC sanctions prohibit the Court from issuing findings of fact that may support issuance and service of a writ or that such findings would violate Article III doctrines.  *(See* Misc. No. 20-257 D.I. 51 at 7-13)  The Court does *not* agree with PDVSA on these points.

27

## CONCLUSION

For the foregoing reasons, the Court has jurisdiction over the judgment creditors' motions. Further, the Court has concluded that no executive order, regulation, or guidance document that has been cited prevents the Court from authorizing the eventual issuance of a writ of attachment contingent on grant of an OFAC license or material modification of the sanctions regime. The Court has also determined that reasonable amounts of time have passed since Huntington Ingalls', ACL's, and ConocoPhillips' judgments were entered. Accordingly, the Court will grant in part ConocoPhillips' motion for a writ of attachment. An appropriate order follows.

# EXHIBIT B

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| OI EUROPEAN GROUP B.V., <br><br> Plaintiff, <br><br> v. <br><br> BOLIVARIAN REPUBLIC OF VENEZUELA, <br><br> Defendant. | Misc. No. 19-290-LPS |
| PHILLIPS PETROLEUM COMPANY VENEZUELA LIMITED and CONOCOPHILLIPS PETROZUATA B.V., <br><br> Plaintiffs <br><br> v. <br><br> PETRÓLEOS DE VENEZUELA, S.A., CORPOGUANIPA, S.A. and PDVSA PETRÓLEO, S.A., <br><br> Defendants. | Misc. No. 19-342-LPS |
| NORTHROP GRUMMAN SHIP SYSTEMS, INC., <br><br> Plaintiff, <br><br> v. <br><br> THE MINISTRY OF DEFENSE OF THE REPUBLIC OF VENEZUELA, <br><br> Defendant. | Misc. No. 20-257-LPS |
| ACL1 INVESTMENTS LTD., ACL2 INVESTMENTS LTD., and LDO (CAYMAN) XVIII LTD., <br><br> Plaintiff, <br><br> v. <br><br> BOLIVARIAN REPUBLIC OF VENEZUELA, <br><br> Defendant. | Misc. No. 21-46-LPS |

## ORDER

At Wilmington, this **2nd** day of **March, 2022**, consistent with and for the reasons stated in the Opinion issued this same date,

**IT IS HEREBY ORDERED** that, under 28 U.S.C. § 1610(c), a reasonable period of time has elapsed following the entry of judgment in favor of Phillips Petroleum Company Venezuela Limited and ConocoPhillips Petrozuata B.V. (together, "ConocoPhillips").

**IT IS FURTHER ORDERED** that, under 28 U.S.C. § 1610(c), a reasonable period of time has elapsed following the entry of judgment in favor of Northrop Grumman Ship Systems, Inc., formerly known as Ingalls Shipbuilding, Inc. and now known as Huntington Ingalls Incorporated ("Huntington Ingalls").

**IT IS FURTHER ORDERED** that, under 28 U.S.C. § 1610(c), a reasonable period of time has elapsed following the entry of judgment in favor of ACL1 Investments Ltd., ACL2 Investments Ltd., and LDO (Cayman) XVIII Ltd. (collectively, "ACL").

**IT IS FURTHER ORDERED** that ConocoPhillips' Motion for an Order Authorizing the Issuance of a Writ of *Fieri Facias* (Misc. No. 19-342 D.I. 2) is **GRANTED IN PART**. Upon the Court's receipt of evidence that the U.S. Treasury Department's Office of Foreign Assets Control ("OFAC") has either (i) authorized the issuance and service of a writ of attachment or (ii) removed the sanctions under which the PDVH Shares are currently blocked property, then the Clerk of this Court is authorized to affix its original signature and seal on ConocoPhillips' writ of attachment *fieri facias*. The Clerk of Court is directed ***not*** to issue or serve the writ of attachment until further order of the Court.

**IT IS FURTHER ORDERED** that PDVSA's motion to strike the Declaration of John E. Smith (Misc. No. 19-290 D.I. 99) is **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** that the parties shall meet and confer and, no later than **March 9, 2022**, submit a joint status report. In the joint status report, the parties shall provide their position(s) on: (i) whether the Court should certify interlocutory appeals on the OFAC issues in these cases, (ii) whether the Court should resolve any of the pending motions in any of these cases (on the merits, as moot, without prejudice to renew, or for or on any other grounds), including whether the Court should deny OI European Group B.V.'s, Huntington Ingalls', and ACL's attachment motions without prejudice to renew, and (iii) any other issues that the parties wish to raise in light of the Court's Opinion in these cases and its concurrent Opinion in *Crystallex International Corp. v. Bolivarian Republic of Venezuela*, Misc. No. 17-151 D.I. 443 (D. Del. Mar. 2, 2022).

_____
UNITED STATES DISTRICT JUDGE

# EXHIBIT C

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| OI EUROPEAN GROUP B.V.,<br><br>        Plaintiff,<br><br>     v.<br><br>BOLIVARIAN REPUBLIC OF VENEZUELA,<br><br>        Defendant. | C.A. No. 19-mc-290-LPS |
| PHILLIPS PETROLEUM COMPANY VENEZUELA LIMITED and CONOCOPHILLIPS PETROZUATA B.V.,<br><br>        Plaintiffs,<br><br>     v.<br><br>PETRÓLEOS DE VENEZUELA, S.A., CORPOGUANIPA, S.A. and PDVSA PETRÓLEO, S.A.,<br><br>        Defendants. | C.A. No. 19-mc-342-LPS |
| NORTHROP GRUMMAN SHIP SYSTEMS, INC.,<br><br>        Plaintiff,<br><br>     v.<br><br>THE MINISTRY OF DEFENSE OF THE REPUBLIC OF VENEZUELA,<br><br>        Defendant. | C.A. No. 20-mc-257-LPS |
| ACL1 INVESTMENTS LTD., ACL2 INVESTMENTS LTD., and LDO (CAYMAN) XVIII LTD.,<br><br>        Plaintiffs,<br><br>     v.<br><br>BOLIVARIAN REPUBLIC OF VENEZUELA,<br><br>        Defendant. | C.A. No. 21-mc-46-LPS |

## JOINT MARCH 9, 2022 STATUS REPORT

In connection with this Court's March 2, 2022 opinion (the "Opinion"), (1:19-mc-00290,
D.I. 109; 1:19-mc-00342, D.I. 42; 1:20-mc-00257, D.I. 58; and 1:21-mc-00046, D.I. 33),  and
pursuant to the Court's March 2, 2022 order (the "Order"), (1:19-mc-00290, D.I. 110; 1:19-mc-
00342, D.I. 43; 1:20-mc-00257, D.I. 59; and 1:21-mc-00046, D.I. 34), directing the parties to file
a joint status report by March 9, 2022, Plaintiffs (i) OI European Group B.V. ("OIEG"), (ii) Phillips
Petroleum Company Venezuela Limited and ConocoPhillips Petrozuata B.V. (together,
"ConocoPhillips"), (iii) Northrop Grumman Ship Systems, Inc., f/k/a Ingalls Shipbuilding, Inc.,
and now known as Huntington Ingalls Incorporated ("Huntington Ingalls"), and (iv) ACL1
Investments Ltd., ACL2 Investments Ltd., and LDO (Cayman) XVIII Ltd. (collectively, "ACL"),
and Defendants/Intervenors (as applicable) (i) Petróleos de Venezuela, S.A. ("PDVSA"); (ii)
Corpoguanipa, S.A. ("Corpoguanipa"); (iii) PDVSA Petróleo, S.A. ("PDVSA Petróleo"); and (iv)
Bolivarian Republic of Venezuela (the "Republic" or "Venezuela") submit this joint status report
addressing the Court's three questions.

## I. Whether the Court should certify interlocutory appeals on the OFAC issues in these cases.

### A. OIEG's Position

OIEG takes no position as to whether the Court should certify interlocutory appeals on the
OFAC issues in these cases, provided that, should that occur, no stay of the OIEG proceedings
addressed in this status report take place.

### B. ConocoPhillips' Position

ConocoPhillips opposes the certification of interlocutory appeals on the OFAC issues in
these cases.  The OFAC issues resolved by this Court's March 2, 2022 Opinion and Order, and
identified by the PDVSA parties for certification, fail to meet the criteria for certification of an
interlocutory appeal under 28 U.S.C. § 1292(b).  Further, there is not sufficient overlap between

the OFAC issues decided by the Court's March 2, 2022 Order and the OFAC issues in *Crystallex International Corp. v. Bolivarian Republic of Venezuela*, such that any appeal ought to be heard together.

### C. **Huntington Ingalls' Position**

Yes, the Court should certify interlocutory appeals on the OFAC issues in these cases— but ***only after*** granting Huntington Ingalls' motion for a conditional writ of attachment. 1:20-mc-00257, D.I. 25; D.I. 54-1 (Huntington Ingalls' revised proposed order). The Court's goal should be to aid the judgment creditors in obtaining the best possible position for joining the eventual sale of PDVH shares in light of the OFAC sanctions regime. It is therefore prudent to allow interlocutory appeals now, so as to reduce the likelihood of adverse holdings on appeal later. That said, the Court's eventual ruling on the alter ego question will prove just as controversial as the recent findings regarding the OFAC sanctions regime and will likely trigger its own wave of appeals. This was, of course, what happened in the wake of the 2018 alter ego determination in *Crystallex*. *See Crystallex Int'l Corp. v. Bolivarian Republic of Venez.*, 932 F.3d 126 (3d Cir. 2019). As discussed more thoroughly below, the proposal described in the Court's opinion to delay a ruling on the alter ego question is prejudicial to Huntington Ingalls and inconsistent with other provisions in the Opinion. The Court should therefore decide the alter ego issue now, and grant Huntington Ingalls' the requested conditional writ of attachments. An added benefit to this route would be to allow one round of consolidated appeals rather than two, increasing judicial efficiency and minimizing costs for the parties involved.

### D. **ACL's Position**

In ACL's view, certifying interlocutory appeals on the OFAC issues would be unwarranted. In any appeal, there could be a question of this Court's jurisdiction. It appears that this Court has jurisdiction over PDVSA in ACL's case only "so long as PDVSA is Venezuela's alter

ego under *Bancec.*" *See Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, 932 F.3d 126, 139 (3d Cir. 2019). This Court has yet to make the alter-ego determination. Moreover, once the Court does make that determination (or its opposite), the disappointed party likely would seek to appeal. The likelihood of that eventual appeal arguably renders an interlocutory appeal at this time inefficient. *See* 28 U.S.C. § 1292(b) (certification requires that "an immediate appeal from the order may materially advance the ultimate termination of the litigation").

### E.  PDVSA's Position[1]

PDVSA respectfully requests that the Court certify interlocutory appeals on the following issues:

1. Whether the Executive Orders and regulations issued by the U.S. Department of Treasury's Office of Foreign Assets Control ("OFAC") prohibit, in the absence of a specific license:

    a. the issuance and/or service of a writ of attachment against blocked property conditioned on OFAC's future grant of a specific license or the lifting of the OFAC sanctions; and/or

    b. a judgment creditor of PDVSA or the Republic from registering its judgment in the U.S. District Court for the District of Delaware pursuant to 28 U.S.C. § 1963.

2. Whether an attachment motion is ripe for adjudication for purposes of Article III of the U.S. Constitution where the property sought to be attached is blocked pursuant to OFAC sanctions and the attachment cannot be granted unless and until, at some future date, the moving party obtains a specific OFAC license or the sanctions are lifted, neither of which may ever occur.

Under 28 U.S.C. § 1292(b), a district court may certify an order for interlocutory appeal where (1) the "order involves a controlling question of law," (2) about which "there is substantial ground for difference of opinion," and (3) "immediate appeal from the order may materially advance the ultimate termination of the litigation."  28 U.S.C. § 1292(b); *see also Katz v. Carte*

---

[1] PDVSA submits this joint status report in accordance with the Court's Order of March 2, 2022.  PDVSA does so while expressly preserving all of its rights and defenses, including its right to sovereign immunity under the FSIA. Nothing in this joint status report should be construed as a waiver of PDVSA's sovereign immunity.

*Blanche Corp.*, 496 F.2d 747, 754-55 (3d Cir. 1974). All of these criteria are satisfied as to the OFAC issues and the ripeness issue set forth above.

With respect to the OFAC issues, as the Court observed in its March 2 Opinion, "there is substantial ground for difference of opinion on how the sanctions apply to these cases" and "[i]f a reviewing court were to adopt an interpretation of the OFAC sanctions that differs from the Court's interpretation, that controlling legal development might effectively halt all proceedings before this Court in *Crystallex* and/or these other judgment enforcement actions." Opinion at 26. This is true with respect to the OFAC issues that PDVSA requests that the Court certify. If the Third Circuit were to disagree with this Court's interpretation of either of these issues, "that controlling legal development" would "effectively halt all proceedings before this Court" by requiring a specific OFAC license, or the lifting of the relevant OFAC sanctions, before further proceedings could occur.

The same is true with respect to the ripeness issue that PDVSA requests the Court to certify for appeal. Whether plaintiffs' attachment motions are ripe for adjudication presents a "controlling question of law" because if the Third Circuit agrees with PDVSA that plaintiffs' attachment motions are not ripe, then the Court's March 2 decision would need to be reversed, the Court would lack Article III jurisdiction, and these proceedings would need to be dismissed. *See Katz*, 496 F.2d at 755.

There is also a "substantial ground for difference of opinion" as to the ripeness of the attachment motions. Plaintiffs' requests for the "conditional" issuance and service of writs of attachment against property blocked by OFAC sanctions required the Court to resolve "novel questions of law" and "to choose between two sets of strong, well-supported, and persuasive arguments." *Crystallex v. Petróleos de Venezuela, S.A., et al.*, C.A. No. 15-1082-LPS, Memorandum Order, D.I. 55 (D. Del. Dec. 27, 2016) (granting PDVH's request for certification

of interlocutory appeals). PDVSA respectfully submits that the Court's Opinion and Order run afoul of the prohibition against the issuance of advisory opinions and conflict with existing case law, including but not limited to Third Circuit law governing the standards for ripeness – *see, e.g.*, *Sherwin-Williams Co. v. Cty. Of Del.*, 968 F.3d 264 (3d Cir. 2020), *In re Lazy Days' RV Ctr. Inc.*, 724 F.3d 418 (3d Cir. 2013), *Suburban Trails, Inc. v. N.J. Transit Corp.*, 800 F.2d 361, 369 (3d Cir. 1986) – and *Republic of Panama v. Lexdale*, 804 F. Supp. 1521 (S.D. Fla. 1992), which dismissed an action on ripeness grounds because virtually identical OFAC regulations prohibited the unlicensed attachment of the property at issue.

Moreover, an immediate appeal of the ripeness issue "may materially advance" the litigation because if the Third Circuit agrees with PDVSA's position on ripeness and reverses this Court's March 2 decision, these enforcement actions would be "terminated on remand," *Crystallex*, C.A. No. 15-1082-LPS, D.I. 55 at 4, with no need for any further proceedings. *See Ford Motor Credit Co. v. S.E. Barnhart & Sons, Inc.*, 664 F.2d 377, 380 (3d Cir. 1981).

Finally, in addition to the other factors supporting certification of the OFAC and ripeness issues, "exceptional circumstances" also warrant certification. *Crystallex*, C.A. No. 15-1082-LPS, D.I. 55 at 5. The issues that PDVSA seeks to certify for appeal involve important and difficult questions about the OFAC sanctions regime, which implicate significant U.S. foreign policy considerations. These threshold issues permeate multiple cases pending in this Court[2] (and that may be brought by other creditors in the future) and if resolved by the Third Circuit now will conserve judicial resources in the future.

Accordingly, PDVSA respectfully requests that the above-listed issues be certified for interlocutory appeal.

---

[2] This includes not only the four above-referenced cases, and *Crystallex*, but also *Red Tree Investments, LLC v. Petróleos de Venezuela, S.A.*, Misc. No. 22-mc-68-LPS & 22-mc-69-LPS and *Rusoro Mining Ltd. v. Bolivarian Republic of Venezuela*, Misc. No. 21-mc-481-LPS.

### F. **Corpoguanipa's and PDVSA Petróleo's Positions**

Corpoguanipa and PDVSA Petróleo concur with the position expressed by PDVSA.

### G. **The Republic's Position**

The Republic concurs with the position expressed by PDVSA.

## II. **Whether the Court should resolve any of the pending motions in any of these cases (on the merits, as moot, without prejudice to renew, or for or on any other grounds), including whether the Court should deny OI European Group B.V.'s, Huntington Ingalls', and ACL's attachment motions without prejudice to renew.**

### A. **OIEG's Position**

*Summary*.  For the reasons outlined below, OIEG requests that this Court enter findings of fact based on the April 30, 2021 hearing, and grant OIEG's pending motion for the conditional issuance of a writ of attachment *fieri facias*.  (This can be done on the basis of specific record materials cited below.)  In the alternative OIEG requests that the Court grant it leave to pursue an interlocutory appeal related to the "pertinent time" issue.

*Background*.  On November 4, 2019, OIEG moved for a writ of attachment *fieri facias* against the shares of PDV Holding, Inc. ("PDVH"), which are owned by PDVSA as an alter ego (at any and all relevant times) of the Republic, on the grounds that the Court's decision in *Crystallex International Corp. v. Bolivarian Republic of Venezuela ("Crystallex I")*, 333 F. Supp. 3d 380 (D. Del. 2018), *aff'd,* 932 F.3d 126 (3d Cir. 2019), collaterally estopped the Republic and PDVSA to deny that PDVSA is the alter ego of the Republic.  1:19-mc-00290, D.I. 2.  At the time of the motion, no OFAC sanctions would have impeded a grant of the writ, and perfection of a judgment lien by service of the writ.

On December 12, 2019, this Court denied the motion, ruling that collateral estoppel did not apply because the "pertinent date" for the alter ego determination was different from that used in the *Crystallex* attachment proceeding.  *Crystallex Int'l Corp. v. PDV Holding Inc.*, 2019 WL 6785504, at *8 (D. Del. Dec. 12, 2019).  On December 23, 2019, OIEG moved to reconsider, citing

7

substantial authorities that it believes stand for the proposition that alter ego status does not evolve depending on the time writs are sought or granted. 1:19-mc-00290, D.I. 27. Unpersuaded, the Court denied the motion, 1:19-mc-00290, D.I. 43, ruling (in a separate action) that the pertinent time is "the period between the filing of the motion seeking a writ of attachment and the subsequent issuance and service of that writ." *Crystallex Int'l Corp. v. Bolivarian Republic of* Venezuela, 2021 WL 129803, at *6 (D. Del. Jan. 14, 2021). This ruling establishes the law of this and related cases as to the "pertinent time."

During the pertinent time, as defined by the Court, OIEG proved that PDVSA remained (as it remains today) the alter ego of Republic. In February 2021, it filed its amended motion seeking a writ of attachment *fieri facias* against the shares of PDVH. 1:19-mc-00290, D.I. 48. Its brief in support, 1:19-mc-00290, D.I. 49, contains an offer of proof ("Offer of Proof") showing that, PDVSA continued to be the alter ego of the Venezuelan state at all potentially relevant times. *Id*. at 4-18. The Offer of Proof was overwhelming, supported by sworn declarations, 1:19-mc-00290, D.I. 50, 51, 78, 86, and 90, and was proved at an evidentiary hearing on April 30, 2021. OIEG's evidence was uncontested, as the Republic and PDVSA relied entirely on a legal theory: that U.S. recognition of a government-in-exile precludes the Court from considering post-recognition facts showing the continued domination by the state over PDVSA's actual operations, officers, employees or foreign assets and that such recognition represented a legally-significant change in circumstances. This legal theory was unavailing. States, not governments, are liable for creditor judgments, and alter ego doctrine penetrates form to reach substance. *See* 1:19-mc-00290, D.I. 77 at 5-10. The persistent U.S. sanctions on the Republic and PDVSA themselves showed then (and show today), that PDVSA remains an arm of, and indistinguishable from OIEG's judgment debtor – the Republic.

Given the OFAC sanctions in place, OIEG requested that the Court enter an order granting its motion, with the issuance and service of the writ conditioned on OFAC approval or lifting of the relevant sanctions.

On March 2, 2022, this Court entered the Opinion and Order: (1) holding that this Court does have *authority* to issue OIEG's requested relief, but (2) declining to enter an order granting such relief or to make findings of fact and conclusions of law with respect to the alter ego issues because "a significant additional amount of time will likely pass before proceedings will continue in the instant actions in this Court." Opinion at 27.

*Requested Relief.* The Court should promptly enter findings of fact with respect to OIEG's amended motion, and grant to OIEG conditional issuance of a writ of attachment *fieri facias*. As shown below, all of the necessary record exists to permit this to occur promptly.

(i) *Findings of Fact.*

Regardless of the finality of relief given or withheld, the Court may and should find facts, specifically, the facts in OIEG's Offer of Proof, *see* 1:19-mc-00290, D.I. 49 at 4-18, which were proved and undisputed at the April 2021 hearing. As this Court has previously expressed, utility and efficiency are served by entering findings of fact even if those findings are to (potentially) be used for future relief. *See Crystallex*, 2021 WL 129803, at *8 ("any creditor may be able to find support (perhaps strong support) in the record created in the *Crystallex Asset Proceeding* and the finding reached (and affirmed) there."). Even if the Court declines to grant a conditional writ, findings would assist appellate review now, and avoid imposing upon another judge of this Court review of the same material later. The litigants have a compelling equitable interest in such fact-finding, in light of the considerable expense undertaken in the preparation and presentation of evidence at the April 30, 2021 hearing.

(ii) *Grant of the Conditional Order.*

9

In addition to finding facts, the Court should hold that, as a matter of law, the factual record warrants a finding that PDVSA is, for purposes of OIEG's attachment motion, the alter ego of the Republic. The Court's concern – that circumstances might materially change between the issuance of its order and relief from OFAC sanctions – is best addressed by permitting the Republic and/or PDVSA, at the time OFAC sanctions are lifted or a license is granted, to show cause (under Fed. R. Civ. P. 60(b) or otherwise) why a Court should, by reason of changed circumstances, grant relief.

*First*, all of OIEG's requested relief is ripe for review today. *See* Opinion at 27 n.20.

*Second*, relief is warranted by the undisputed facts, for the reasons stated.

*Third*, relief would be fully consistent with this Court's prior practice of making alter ego findings even when the issuance and service of a writ was expressly conditioned on further briefing and court order(s). See Crystallex I, 333 F.Supp.3d at 425-26 ("By its decision today, the Court is holding that it will, after conferring further with the parties about additional details, direct the Clerk of the Court to issue to Crystallex a writ, which Crystallex will then have the opportunity to serve and attach to PDVSA's property in Delaware . . . . The Clerk of Court is directed **not** to issue the writ of attachment until after the Court issues an additional Order following its review of the forthcoming status report.").

*Fourth*, it would be inequitable to permit one creditor (ConocoPhillips) to obtain a conditional order of attachment while delaying relief to another (OIEG), when OIEG has already made a full case of (at minimum) legal parity with ConocoPhillips – and if it is correct concerning the "pertinent time" issue, equitable priority.[3] *See* Opinion at 21 ("From the perspective of judicial

---

[3] OIEG sought its attachment before ConocoPhillips (and all other judgment creditors other than Crystallex) and, under its view of "pertinent time," would have perfected before ConocoPhillips. Any interlocutory appeal that is pursued from this Court's recent decisions construing OFAC regulations will have no impact on the question of PDVSA's alter ego status. While OFAC sanctions may impact the *timing* of the ultimate

administration, it makes sense that ConocoPhillips and the other judgment creditors will all have access to the same form of relief at the same point in their judgment enforcement efforts.").  As this Court has previously made clear, at a minimum the question is whether or not the alter ego status exists "at this time" – not tomorrow.  *See Crystallex*, 2021 WL 129803, at *6 n.16.  After a full day evidentiary hearing and a significant record in front of it, judicial economy would not be served by now hitting the reset button.

In the event that the Court does not grant the conditional order, OIEG requests that the Court nevertheless make findings of fact (for the reasons stated above) and authorize OIEG under 28 U.S.C. § 1292 to seek interlocutory relief from this Court's prior orders (and any order entered now) so that OIEG may challenge this Court's ruling as to the "pertinent time" for determination of PDVSA's alter ego status, and, if successful, advise the Court of Appeals of a record that will permit effective appellate relief.  As previously expressed to this Court, and preserved in OIEG's filings to date, OIEG's position is that the "pertinent time" has already occurred.

### B.  ConocoPhillips' Position

There are no pending motions to be decided in ConocoPhillips' case.  ConocoPhillips takes no position on whether the Court should rule, decline to rule, or dismiss without prejudice to renew the pending motions of OIEG, Huntington Ingalls and ACL.

### C.  Huntington Ingalls' Position

Yes, the Court should grant Huntington Ingalls' pending amended motion for a conditional writ of attachment.  *See* 1:20-mc-00257, D.I. 25; D.I. 54-1 (Huntington Ingalls' revised proposed

---

issuance and/or service of the requested writ, it would be inequitable to force OIEG to the sideline while other judgment creditors gain a priority advantage due to hypothetical changes in circumstances that may occur between now and when the interlocutory appeals run their course.  Judicial economy would be better served by entering a conditional order of attachment *today,* subject to unwind should circumstances merit.

order).  In doing so, the Court should determine, as a matter of law, that PDVSA is the alter ego of Venezuela, subjecting its shares of PDVH to attachment.

The Court should **not** postpone the question of PDVSA's alter ego status.  Postponing the alter ego question is prejudicial to Huntington Ingalls and will result in treatment different to the treatment of ConocoPhillips without legal basis.  If the Court dismisses the pending amended motion for a conditional writ of attachment, without prejudice, then at some point in the future, the Court's Opinion will be upheld and, eventually, OFAC will issue licenses to ConocoPhillips and Huntington Ingalls. However, at that point, while ConocoPhillips will be free to join in an auction of PDVH, Huntington Ingalls will be forced to relitigate the alter ego question and then wait for the Third Circuit to review that decision.  By the end of that process, the assets of PDVH will have dissipated and any victory it receives will be pyrrhic.

But isn't such a result warranted, given the fact that the ConocoPhillips judgment is against PDVSA while the Huntington Ingalls decision is against Venezuela?  No, it is not.  On April 30, 2021, Huntington Ingalls proved that Venezuela and PDVSA are alter egos.  *See* 1:20-mc-00257, D.I. 47 (Official Transcript of Oral Argument Video Hearing held on April 30, 2021).  As a result, judgments against PDVSA and Venezuela are legally equivalent.  *See EM Ltd. v. Banco Cent. de la República Arg.*, 800 F.3d 78, 91 n.56 (2d Cir. 2015) ("[O]nce an instrumentality of a sovereign state has been deemed to be the alter ego of that state . . ., the instrumentality and the state are to be treated as one and the same for all purposes.").  And this Court has held that it can issue conditional writs, notwithstanding the absence of a license from OFAC.  Logically, if the Court can grant a conditional writ, and does so in favor of ConocoPhillips as a PDVSA judgment creditor, then it can also do the same in favor of Venezuelan judgment creditors, like Huntington Ingalls, that have proven that Venezuela and PDVSA are alter egos.

In its decision in *Crystallex*, this Court held that the pertinent time for determining whether two parties are alter egos for the purpose of the enforcement of a judgment is "the period between the filing of the motion seeking a writ of attachment and the subsequent issuance and service of that writ." Opinion at 27 (quoting *Crystallex Int'l Corp. v. Bolivarian Republic of Venez.*, No. 17-mc-151-LPS, 2021 U.S. Dist. LEXIS 7793, at *18 (D. Del. Jan. 14, 2021)). Venezuela, of course, previously argued in *Crystallex* that the only pertinent date is the date the writ is issued, but this Court did not accept that argument. *See Crystallex Int'l Corp. v. PDV Holding Inc.*, No. 15-cv-1082-LPS, 2019 U.S. Dist. LEXIS 214167, at *23 n.19 (D. Del. Dec. 12, 2019) ("Venezuela '***points to no authority*** for [its] proposition' that ***the only pertinent date is the date the writ is issued***") (emphasis added).

The Opinion confirms that a conditional writ can be issued and served now. True, the conditional writ can only become unconditional after an OFAC license issues. However, that is a political matter which has nothing to do with the legal merits of any of the judgment currently pending against Venezuela and PDVSA. It is possible, of course, that the political and social structure of Venezuela will change in some way between now and whatever time the OFAC license issues—just as it changed between the date that this Court found Venezuela and PDVSA to be alter egos in the Crystallex case and today. But that change will be immaterial since the conditional writ will already have been issued and served. In any event, the Federal Rules of Civil Procedure already prescribe a remedy for Venezuela and PDVSA in those circumstances. *See* Fed. R. Civ. P. 60.

Following the path outlined above is legally correct and will ensure equity amongst equivalent creditors. It will also prevent Venezuela from continuing to use its corporate shell game —continuously moving assets between Venezuela and PDVSA whenever convenient—to the detriment of judgment creditors in Delaware. At the same time, ruling in favor of Huntington

Ingalls on its application for a conditional writ based on the alter ego relationship between Venezuela and PDVSA will also avoid an unnecessary waste of judicial resources. On April 30, 2021, Huntington Ingalls and OIEG litigated the issue of PDVSA's alter ego status. *See* 1:20-mc-00257, D.I. 47 (Official Transcript of Oral Argument Video Hearing held on April 30, 2021). The parties spent considerable resources preparing for, and attending, the all-day hearing. The parties spent additional resources in two rounds of post-hearing briefing. *See* 1:20-mc-00257, D.I. 51– 54. These efforts were made with one goal: to establish PDVSA as Venezuela's alter ego, allowing the Court to grant a conditional writ of attachment preventing execution of a final writ only until one of two events occur: (*i*) the parties' receipt of an OFAC special license or (*ii*) the removal or modification of the sanctions regime. *See* 1:20-mc-00257, D.I. 55-1 (Huntington Ingalls' revised proposed order). If the Court proceeds as it suggested in the Opinion, the resources spent in relation to the April 30, 2021 hearing will have been for nothing. A new hearing will be necessary on some date in the future when OFAC grants Huntington Ingalls a license, *see* Opinion at 27, but while Huntington Ingalls scrambles to litigate the issue at that time, it will watch, from a distance, as Crystallex and ConocoPhillips proceed alone against the PDVH shares. *See Crystallex Int'l Corp. v. PDV Holding Inc.*, No. 1:17-mc-00151-LPS, D.I. 443 (D. Del. Mar. 2, 2022) (concluding that the Court can continue to proceed with a sales process despite the OFAC sections).

The result of the Court's proposed route is inequitable and would be contrary to the very relief that the Court recognized in the Opinion that it has the authority to give. In its ripeness analysis, the Court correctly recognized that "the judgment creditors are faced with a dilemma: if they wait for OFAC to provide additional guidance on how far the attachment process can or should go under the current sanctions, OFAC may decide not to provide any guidance at all, leaving the judgment creditors in legal limbo." Opinion at 9. The Court also understood that "[t]he judgment creditors are asking this Court to provide relief now in the form of orders that will

leave them better prepared to perfect interests in the PDVH Shares at the appropriate time." *Id.* at 10. By failing to consider the alter ego question, however, the Court leaves Huntington Ingalls in the exact same position it was in prior to filing for a motion for a writ of attachment. Huntington Ingalls remains in a costly "legal limbo."

Again, while Huntington Ingalls would suffer great prejudice in any further delay on the alter ego question, no such prejudice would fall upon either PDVSA or Venezuela if the Court were to grant Huntington Ingalls' motion now. Events have not materially reduced Venezuela's control and use of PDVSA and its assets since the April 2021 hearing. If events subsequently do change in a material way after the Court grants Huntington a conditional writ, the burden should shift to Venezuela or PDVSA to show cause as to why the Court's judgment should be set aside. *See* Fed. R. Civ. P. 60.

Like OIEG, Huntington Ingalls requests that, if the Court does not grant the conditional order, the Court nevertheless make findings of fact and authorize Huntington Ingalls under 28 U.S.C. § 1292 to pursue interlocutory relief from this Court's prior orders (and any order entered now) so that Huntington Ingalls may challenge this Court's ruling as to the "pertinent time" for determination of PDVSA's alter ego status. Huntington Ingalls believes that the pertinent time of the alter ego analysis has passed.

### D. **ACL's Position**

Regardless whether an interlocutory appeal is certified, in ACL's view, ACL's attachment motion should not be dismissed without prejudice at this time. Instead, it would be appropriate to resolve ACL's motion on its merits by deciding whether PDVSA is Venezuela's alter ego. Deciding this question could facilitate the sale process in *Crystallex* by making more clear which judgment creditors of Venezuela (as opposed to PDVSA) might be able to participate. It should not matter, in ACL's view, that the "pertinent time" (as determined by this Court) for the alter ego

determination runs through when the writ is issued and served. Service of the writ remains barred by OFAC sanctions. And resolution of key questions in this litigation should not await the final lifting of those sanctions. *See Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, Misc. No. 17-151, 2022 WL 611586, at *19 (D. Del. Mar. 2, 2022) ("The litigation before the Court simply cannot be permitted to continue forever.").

### E. **PDVSA's Position**

PDVSA agrees with the Court's inclination "to deny OIEG's, Huntington Ingalls', and ACL's pending attachment motions, PDVSA's pending motions to dismiss, and any other pending motions without prejudice, allowing any motions to be refiled once the Court has the benefit of any decisions issued as a result of the interlocutory appeals (if they occur)."  Opinion at 27.

As set forth above, if an interlocutory appeal is certified and PDVSA prevails on the OFAC and/or ripeness issues, the result will be that proceedings in this Court cannot go forward – either because they are not ripe or because they are prohibited by OFAC sanctions – unless and until plaintiffs obtain a specific license from OFAC or the relevant OFAC sanctions are lifted. And, if an interlocutory appeal is certified and PDVSA does not prevail on appeal, the Court and the parties will have the benefit of definitive guidance from the Third Circuit as to how far these actions may proceed in the absence of an OFAC license.

Moreover, as the Court recognized in its Opinion, because the Court has ruled that the "pertinent time" for purposes of the alter ego analysis is "the period between the filing of the motion seeking a writ of attachment and the subsequent issuance and service of that writ," Opinion at 27, and there is no dispute that (at a minimum) service of the writ cannot happen until plaintiffs obtain a specific OFAC license, there is simply no reason or basis to decide the alter ego issue now.  Thus, although PDVSA believes it is clear that plaintiffs utterly failed as a matter

of law and fact to establish that PDVSA is the alter ego of the Republic, it would be a waste of judicial resources to adjudicate the alter ego issue prior to the resolution of the interlocutory appeals, when resolution of the appeals may obviate the need for, or preclude resolution of, the alter ego issue and where the alter ego issue will need to be revisited at a later date in any event.

Accordingly, PDVSA requests that the Court deny OIEG's, Huntington Ingalls' and ACL's attachment motions, and PDVSA's cross-motions to dismiss, without prejudice to refile after the interlocutory appeals are finally resolved.  Alternatively, PDVSA requests that the pending motions be held in abeyance until final resolution of the interlocutory appeals.

### F.  **Corpoguanipa's and PDVSA Petróleo's Positions**

Corpoguanipa and PDVSA Petróleo concur with the position expressed by PDVSA.

### G.  **The Republic's Position**

The Republic concurs with the position expressed by PDVSA.

### III.  **Any other issues that the parties wish to raise in light of the Court's Opinion in these cases and its concurrent Opinion in *Crystallex International Corp. v. Bolivarian Republic of Venezuela*, Misc. No. 17-151 D.I. 443 (D. Del. Mar. 2, 2022).**

### A.  **OIEG's Position**

In light of the Court's decision to continue moving the Crystallex attachment proceeding and potential sale forward, OIEG respectfully requests that this Court act swiftly to permit OIEG the opportunity to advance its own attachment proceeding to make the eventual sale more efficient and value-maximizing for all parties involved.

### B.  **ConocoPhillips' Position**

ConocoPhillips has no further issues to raise at this time.

### C.  **Huntington Ingalls' Position**

Huntington Ingalls has no further issues to raise at this time.

### D.  **ACL's Position**

ACL has no further issues to raise at this time.

### E. **PDVSA's Position**

PDVSA has no further issues to raise at this time.

### F. **Corpoguanipa's and PDVSA Petróleo's Positions**

Corpoguanipa and PDVSA Petróleo have no further issues to raise at this time.

### G. **The Republic's Position**

The Republic has no further issues to raise at this time.

*     *     *

The parties are available at the Court's convenience should Your Honor have any questions.

Dated: March 9, 2022

| | |
|---|---|
| HEYMAN ENERIO GATTUSO & HIRZEL LLP | MORGAN, LEWIS & BOCKIUS LLP |
| By: */s/ Samuel T. Hirzel*<br>Samuel T. Hirzel (#4415)<br>300 Delaware Avenue, Suite 200<br>Wilmington, DE 19801<br>Telephone: 302-472-7300<br>SHirzel@hegh.law | By: */s/ Jody C. Barillare*<br>Jody C. Barillare (#5107)<br>1201 N.Market St., Suite 2201<br>Wilmington, DE 19801<br>Telephone: 302-574-3000<br>Facsimile: 302-574-3001<br>jody.barillare@morganlewis.com |
| CURTIS, MALLET-PREVOST, COLT & MOSLE LLP<br>Joseph D. Pizzurro<br>Julia B. Mosse<br>Kevin A. Meehan<br>Juan O. Perla<br>101 Park Avenue<br>New York, NY 10178<br>Telephone: 212-696-6000<br>jpizzurro@curtis.com<br>jmosse@curtis.com<br>kmeehan@curtis.com<br>jperla@curtis.com | - and -<br><br>Sabin Willett (*pro hac vice*)<br>Jonathan Albano (*pro hac vice*)<br>Christopher L. Carter (*pro hac vice*)<br>One Federal Street<br>Boston MA 02110<br>Telephone: 617-341-7700<br>Facsimile: 617-341-7701<br>sabin.willett@morganlewis.com<br>jonathan.albano@morganlewis.com<br>christopher.carter@morganlewis.com |
| *Attorneys for Petróleos de Venezuela, S.A., Corpoguanipa, S.A., and PDVSA Petróleo, S.A.* | SEQUOR LAW, P.A.<br>Edward H. Davis, Jr. (*pro hac vice*)<br>Fernando J. Menendez (*pro hac vice*)<br>111 Brickell Ave., Suite 1250<br>Miami, FL 33131<br>Telephone: 305-372-8282<br>Facsimile: 305-372-8202<br>edavis@sequorlaw.com<br>fmenendez@sequorlaw.com<br><br>*Attorneys for OI European Group B.V.* |
| ABRAMS & BAYLISS LLP | ROSS ARONSTAM & MORITZ LLP |
| By: */s/ A. Thompson Bayliss*<br>A. Thompson Bayliss (#4379)<br>Stephen C. Childs (#6711)<br>20 Montchanin Road, Suite 200<br>Wilmington, DE 19807<br>Telephone: 302-778-1000<br>bayliss@abramsbayliss.com | By: */s/ Garrett B. Moritz*<br>Garrett B. Moritz (#5646)<br>100 S. West Street, Suite 400<br>Wilmington, DE 19801<br>Telephone: 302-576-1600<br>gmoritz@ramllp.com |

| | |
|---|---|
| childs@abramsbayliss.com<br>SULLIVAN & CROMWELL LLP<br>Sergio J. Galvis<br>Joseph E. Neuhaus (*pro hac vice*)<br>James L. Bromley (*pro hac vice*)<br>125 Broad Street<br>New York, New York 10004<br>Telephone: 212-558-4000<br>Facsimile: 212-558-3588<br>galvis@sullcrom.com<br>neuhausj@sullcrom.com<br>bromleyj@sullcrom.com<br><br> - and -<br><br>Angela N. Ellis<br>1700 New York Avenue, N.W. Suite 700<br>Washington, D.C. 20006-5215<br>Telephone: 202-956-7500<br>Facsimile: 202-293-6330<br>ellisan@sullcrom.com<br><br>*Attorneys for the Bolivarian Republic of Venezuela* | KOBRE & KIM LLP<br>Michael S. Kim<br>Marcus J. Green<br>Josef M. Klazen<br>800 Third Avenue<br>New York, New York 10022<br>Telephone: 212-488-1200<br>michael.kim@kobrekim.com<br>marcus.green@kobrekim.com<br>jef.klazen@kobrekim.com<br><br>*Attorneys for Phillips Petroleum Company Venezuela Limited and ConocoPhillips Petrozuata B.V.* |
| PACHULSKI STANG ZIEHL & JONES, LLP<br><br>By: */s/ Laura Davis Jones*<br>Laura Davis Jones (#2436)<br>Peter J. Keane (#5503)<br>919 North Market Street, Suite 1600<br>P.O. Box 8705<br>Wilmington, DE 19899-8705<br>Telephone: 302-652-4100<br>ljones@pszjlaw.com<br>pkeane@pszjlaw.com<br><br><br>ALSTON & BIRD LLP<br>Alexander A. Yanos (*pro hac vice*)<br>Rajat Rana (*pro hac vice*)<br>Robert Poole (*pro hac vice*)<br>90 Park Avenue, 15th Floor<br>New York, NY 10016-1387<br>Telephone: 212-210-9400<br>alex.yanos@alston.com<br>rajat.rana@alston.com | ASHBY & GEDDES<br><br>By: */s/ Marie M. Degnan*<br>Marie M. Degnan (#5602)<br>500 Delaware Ave., 8th Floor<br>P.O. Box 1150<br>Wilmington, DE 19899<br>Telephone: 302-654-1888<br>mdegnan@ashbygeddes.com<br><br><br>RILEY WARNOCK & JACOBSON, PLC<br>Joshua S. Bolian<br>Keane A. Barger<br>1906 West End Avenue<br>Nashville, Tennessee 37203<br>Telephone: 615-320-3700<br>jbolian@rwjplc.com<br>kbarger@rwjplc.com<br><br>*Attorneys for ACL1 Investments Ltd., ACL2 Investments Ltd. and LDO (Cayman) XVIII Ltd.* |

| | |
|---|---|
| robert.poole@alston.com<br>*Attorneys for Northrop Grumman Ship Systems, Inc., f/k/a Ingalls Shipbuilding, Inc. and now known as Huntington Ingalls Incorporated* | |

# EXHIBIT D

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| OI EUROPEAN GROUP B.V., <br><br>      Plaintiff, <br><br>      v. <br><br> BOLIVARIAN REPUBLIC OF VENEZUELA, <br><br>      Defendant. | Misc. No. 19-290-LPS |
| PHILLIPS PETROLEUM COMPANY VENEZUELA LIMITED and CONOCOPHILLIPS PETROZUATA B.V., <br><br>      Plaintiffs, <br><br>      v. <br><br> PETRÓLEOS DE VENEZUELA, S.A., CORPOGUANIPA, S.A., and PDVSA PETRÓLEO, S.A., <br><br>      Defendants. | Misc. No. 19-342-LPS |
| NORTHROP GRUMMAN SHIP SYSTEMS, INC., <br><br>      Plaintiff, <br><br>      v. <br><br> THE MINISTRY OF DEFENSE OF THE REPUBLIC OF VENEZUELA, <br><br>      Defendant. | Misc. No. 20-257-LPS |
| ACL1 INVESTMENTS LTD., ACL2 INVESTMENTS LTD., and LDO (CAYMAN) XVIII LTD., <br><br>      Plaintiffs, <br><br>      v. <br><br> BOLIVARIAN REPUBLIC OF VENEZUELA, <br><br>      Defendant. | Misc. No. 21-46-LPS |

| RED TREE INVESTMENTS, LLC, | |
| Plaintiff, | |
| v. | Misc. Nos. 22-68-LPS |
| PETRÓLEOS DE VENEZUELA, S.A. and PDVSA PETRÓLEO, S.A., | & 22-69-LPS |
| Defendants. | |

## <u>MEMORANDUM ORDER</u>

WHEREAS, in an Opinion dated March 2, 2022, the Court concluded (among other things) that the Venezuelan sanctions regime implemented by the U.S. Treasury Department's Office of Foreign Assets Control ("OFAC") does not bar the Court from authorizing the eventual issuance of writs of attachment *fieri facias* sought by OI European Group B.V. ("OIEG"); Phillips Petroleum Company Venezuela Limited and ConocoPhillips Petrozuata B.V. (together, "ConocoPhillips"); Northrop Grumman Ship Systems, Inc., now known as Huntington Ingalls Inc. ("Huntington Ingalls"); and ACL1 Investments Ltd., ACL2 Investments Ltd., and LDO Cayman XVIII Ltd. (collectively, "ACL"), provided that such writs will not be issued, delivered, or served unless and until the judgment creditors receive specific licenses from OFAC or the sanctions regime materially changes (*see generally* Misc. No. 19-290 D.I. 109 ("March 2022 Opinion") at 12-22);[1]

WHEREAS, in a Memorandum Order dated April 28, 2022, the Court applied its

---

[1] For simplicity, throughout the instant Memorandum Order, the Court generally cites the March 2022 Opinion, corresponding Order, and subsequent joint status report as docketed in Misc. No. 19-290, even though the same documents appear on the dockets of three more of these cases.   (*See generally* Misc. No. 19-342 D.I. 42, 43, 45; Misc. No. 20-257 D.I. 58, 59, 60; Misc. No. 21-46 D.I. 33, 34, 35)

1

reasoning from the March 2022 Opinion regarding the OFAC issue to the cases brought by Red Tree Investments, LLC ("Red Tree") (*see generally* Misc. No. 22-68 D.I. 15);[2]

WHEREAS, the Court explained that it is inclined to certify interlocutory appeals regarding the OFAC issue to the Third Circuit (*see* March 2022 Opinion at 25-26);

WHEREAS, the Court ordered a joint status report to give the parties an opportunity to provide their views on potential interlocutory appeals (*see id.* at 26; *see also* Misc. No. 19-290 D.I. 110 ("March 2022 Order") at 3);

WHEREAS, OIEG, ConocoPhillips, Huntington Ingalls, ACL, Petróleos de Venezuela, S.A. ("PDVSA"), Corpoguanipa, S.A., PDVSA Petróleo, S.A., and the Bolivarian Republic of Venezuela (the "Republic") submitted a joint status report setting forth their views on potential interlocutory appeals (*see generally* Misc. No. 19-290 D.I. 111);

WHEREAS, Red Tree separately indicated its position regarding potential interlocutory appeals in a brief filed after the Court issued its March 2022 Opinion and Order (*see* Misc. No. 22-68 D.I. 11 at 3, 8 n.5, 9, 16);

WHEREAS, the Court has carefully considered the parties' positions and their arguments for and against certification of interlocutory appeals;

**NOW, THEREFORE, IT IS HEREBY ORDERED** that the Court's March 2, 2022 Order (Misc. No. 19-290 D.I. 110; Misc. No. 19-342 D.I. 43; Misc. No. 20-257 D.I. 59; Misc. No. 21-46 D.I. 34) and April 28, 2022 Memorandum Order (Misc. No. 22-68 D.I. 15; Misc. No. 22-69 D.I. 15) are **AMENDED** to incorporate the Court's discussion and conclusions in the

---

[2] Because the filings in Misc. No. 22-68 and Misc. No. 22-69 are substantively identical and numbered in the same manner, the Court's citations to the docket in Misc. No. 22-68 should also be understood as referring to the docket in Misc. No. 22-69.

instant Memorandum Order.

1.     The Court has discretion to certify an order for interlocutory review when "exceptional circumstances" merit a departure from the final judgment rule.   *See Coopers & Lybrand v. Livesay*, 437 U.S. 463, 475 (1978) (internal quotation marks omitted), *superseded by rule on other grounds, as stated in Microsoft v. Baker*, 137 S. Ct. 1702 (2017).   "When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that [i] such order involves a controlling question of law [ii] as to which there is substantial ground for difference of opinion and that [iii] an immediate appeal from the order may materially advance the ultimate termination of the litigation, he [or she] shall so state in writing in such order."   28 U.S.C. § 1292(b); *see also, e.g.*, *Obasi Inv. Ltd. v. Tibet Pharm., Inc.*, 931 F.3d 179, 183 (3d Cir. 2019).   In these cases, all three requirements under § 1292(b) are met with respect to the OFAC issue.

2.     ***Controlling Question of Law.***   In the March 2022 Opinion, the Court definitively determined that the OFAC sanctions do not prevent the Court from authorizing the eventual issuance of a writ of attachment, conditioned on the judgment creditor's receipt of a specific license from OFAC or a material modification to the sanctions regime.   (*See* March 2022 Opinion at 12-22)   Given that conclusion, the Court issued a corresponding Order that granted in part ConocoPhillips' motion for a writ of attachment.   (March 2022 Order at 2)   Subsequently, the Court also granted in part Red Tree's motions for similar writs of attachment. (Misc. No. 22-68 D.I. 15)   If the Third Circuit were to disagree with this Court on the OFAC issue, the proceedings in all of the above-captioned actions would effectively be halted unless and until the judgment creditors obtain specific licenses from OFAC or the sanctions regime

3

materially changes.   *See, e.g.*, *Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, 2022

WL 611586, at *19 (D. Del. Mar. 2, 2022) (noting that Court of Appeals' disagreement could

"prevent this Court from undertaking . . . costly, unnecessary, and legally invalid" steps in

litigation).   Moreover, if the Third Circuit disagrees with this Court, then the Third Circuit

would likely vacate this Court's partial grant of ConocoPhillips' and Red Tree's motions for a

writ of attachment.   Thus, the March 2022 Order involves a controlling question of law.

        3.    ***Substantial Ground for Difference of Opinion.***    The Court "has done its best to

evaluate the parties' competing arguments and to explain its reasoning for concluding that it has

the authority, consistent with the sanctions," to authorize the eventual issuance of a writ of

attachment.   *Crystallex*, 2022 WL 611586, at *19.   As the Court already explained, it "has

spent a great deal of time over the past year analyzing the sanctions regime," and it "is confident

it has reached the best decisions it possibly can."   (March 2022 Opinion at 26)   At the same

time, the Court recognizes that PDVSA has presented coherent and reasonable arguments

supporting its interpretation of the OFAC sanctions.   In particular, PDVSA's arguments focus

on the plain text of the relevant Executive Orders and OFAC regulations.   (*See, e.g.*, Misc. No.

19-342 D.I. 33, 36; Misc. No. 22-68 D.I. 10 at 6-11)   While the Court disagrees with PDVSA,

PDVSA raises novel legal issues that have not been resolved by other courts.   Accordingly, the

Court concludes that there is substantial ground for difference of opinion regarding the OFAC

issue.   (*See* March 2022 Opinion at 26) (recognizing that "there is substantial ground for

difference of opinion on how the sanctions apply to these cases")

        4.    ***Material Advancement of the Litigation's Ultimate Termination.***    "The

requirement that an appeal may materially advance the ultimate termination of the litigation is

closely tied to the requirement that the order involve a controlling question of law." 16 Wright
& Miller, *Federal Practice and Procedure* § 3930 (3d ed. Apr. 2022 Update). As the Court
explained above for the first factor, the Third Circuit's vacatur or reversal of the March 2022
Order might completely stop this litigation from proceeding in this Court (at least for now).
Conversely, if the Third Circuit agrees with this Court, "the Court of Appeals could provide
greater comfort" in the legitimacy of these proceedings and would help to push them toward
their conclusion. *Crystallex*, 2022 WL 611586, at *19. Thus, the Court concludes that
interlocutory appeals would materially advance the ultimate termination of this litigation.

   5. ***Exceptional Circumstances.*** As PDVSA observes, the OFAC issue implicates
"significant U.S. foreign policy considerations" that "permeate" these cases and will permeate
any future cases brought by any other judgment creditors of PDVSA and/or the Republic.
(Misc. No. 19-290 D.I. 111 at 6) These exceptional circumstances make interlocutory review
particularly appropriate here. *See Crystallex Int'l Corp. v. Petróleos de Venezuela, S.A.*, 2016
WL 7440471, at *2 (D. Del. Dec. 27, 2016) (explaining that interlocutory appeal was warranted
because "international comity is implicated" and "enormous sums of money are at stake").

   6. ***Arguments Against Certification of the OFAC Issue.*** ConocoPhillips
opposes certification of interlocutory appeals because, in its view, the "OFAC issues . . . fail to
meet the criteria for certification . . . under 28 U.S.C. § 1292(b)." (Misc. No. 19-290 D.I. 111 at
2) For the reasons explained above, the Court disagrees. ACL suggests that interlocutory
appeals would be "unwarranted" because "there could be a question of this Court's jurisdiction."
(*Id.* at 3) The Court does not believe that any jurisdictional problem would preclude the Third
Circuit's review. (*See* March 2022 Opinion at 12 n.9)

7.   **Parties' Additional Requests.**   In the joint status report, the parties provide some

additional suggestions about how these cases should now proceed.   The Court will adopt some,

but not all, of those suggestions.

a.   OIEG states that if any interlocutory appeal should occur, there should be

"no stay of the OIEG proceedings."   (Misc. No. 19-290 D.I. 111 at 2; *see also id.* at 17 ("OIEG

respectfully requests that this Court act swiftly to permit OIEG the opportunity to advance its

own attachment proceeding to make the eventual sale more efficient and value-maximizing for

all parties involved."))   Generally, the Court agrees with OIEG that, to the extent possible, the

proceedings in these cases should continue to move forward.   *See, e.g.*, *Crystallex*, 2022 WL

611586, at *20 ("During such [interlocutory] appeal, the proceedings in this Court . . . would not

be stayed.").   Any disputes about the progression of these cases will be resolved at the

appropriate time.

b.   Huntington Ingalls supports certification, "but **only after** granting

Huntington Ingalls' motion for a conditional writ of attachment," which would first require the

Court to make factual findings regarding PDVSA's alter ego status.   (*See* Misc. No. 19-290 D.I.

111 at 3)   Similarly, OIEG and ACL ask the Court to make factual findings on PDVSA's alter

ego status and to grant their motions for conditional writs of attachment.   (*Id.* at 7, 15)[3]   The

_____

[3] The work completed in connection with the April 30, 2021 hearing will not go to waste;
that work will be evaluated, to the extent necessary, when the Court decides the judgment
creditors' pending motions.   The Court is not persuaded that postponing further assessment of
the alter ego question is prejudicial (*see, e.g.*, Misc. No. 19-290 D.I. 111 at 12), in part because
no judgment creditor can obtain priority in the PDVH Shares unless and until it obtains a specific
license from OFAC or the sanctions regime materially changes.   Additionally, certain creditors'
concerns that these cases would need to be reassigned to a new judge (*see, e.g.*, *id.* at 9) are
addressed by the fact that the undersigned Judge has been designated to remain assigned to these

Court has already explained, however, that it is not prepared to make any factual findings

regarding PDVSA's alter ego status at this juncture.   (*See* March 2022 Opinion at 26-27)

Moreover, because, as explained below, the Court is certifying the "pertinent time" issue for

interlocutory review, the issuance of factual findings at this time would be inefficient.   As

PDVSA explains, "it would be a waste of judicial resources to adjudicate the alter ego issue prior

to the resolution of the interlocutory appeals, when resolution of the appeals may obviate the

need for, or preclude resolution of, the alter ego issue and where the alter ego issue will need to

be revisited at a later date in any event."   (Misc. No. 19-290 D.I. 111 at 17)   In light of the

potential interlocutory appeals, PDVSA suggests that it would be appropriate to hold the motions

for writs of attachment in abeyance.   (*See id.* at 17)   That is how the Court will proceed.[4]

       c.       PDVSA asks the Court to certify two other issues for interlocutory review:

(i) whether Executive Orders and OFAC regulations bar judgment creditors of PDVSA and/or

the Republic from registering their judgments in this Court under 28 U.S.C. § 1963, and (ii)

whether the motions for writs of attachment presented in these cases are ripe for adjudication

under Article III of the U.S. Constitution.   (Misc. No. 19-290 D.I. 111 at 4)   The Court is not

persuaded that there is a substantial ground for difference of opinion on these issues.

Accordingly, the Court declines to frame these issues for interlocutory review.[5]

---

(and related) cases.

   [4] For the time being, the motions for conditional writs of attachment will remain pending.
Although the Court previously raised the possibility of denying those motions without prejudice
(*see* March 2022 Opinion at 27), at this point the Court will not do so, in order to avoid any
unintended prejudice.

   [5] The Court has reviewed PDVSA's notice of supplemental authority (*see generally*

8.      *Pertinent Time Issue.*   OIEG requests that if the Court is not granting its motion

(as the Court currently is not), then as an alternative, the Court should certify an interlocutory

appeal regarding the "pertinent time" for determining whether PDVSA is the Republic's alter

ego.   (*Id.* at 7, 11)   Huntington Ingalls asks the Court to do the same.   (*Id.* at 15)   The Court

grants these requests.   The pertinent time issue presents a controlling question of law.   If the

Third Circuit disagrees with this Court and holds that the pertinent time for the alter ego analysis

is the time of the injury that gave rise to the underlying judgment, the Court would no longer

need to decide whether it must limit its view of the evidence to that involving the administration

of Interim President Guaidó.   (*See, e.g.*, Misc. No. 19-290 D.I. 65 at 9-20)   Given the lack of

precedent and the significant arguments on both sides, there is substantial ground for difference

of opinion on the pertinent time issue.   The Third Circuit's input at this stage would help

facilitate the ultimate termination of this litigation as the Court would know, with confidence,

whether it needs to evaluate the alter ego question again and again (in several of the above-

captioned cases and in other related pending and future cases).   Lastly, the foreign policy

considerations and large amounts of money at stake in these cases present exceptional

circumstances that make interlocutory review of the pertinent time issue especially appropriate.

9.      *Conclusion.*   For the foregoing reasons, the Court certifies the following

questions for interlocutory review:

---

Misc. No. 19-290 D.I. 112 (citing *Cassirer v. Thyssen-Bornemisza Collection Foundation*, No.
20-1566, 2022 WL 1177497 (U.S. Apr. 21, 2022)), which does not alter the Court's conclusion
about which issues are suitable for interlocutory review.

Whether Executive Orders and regulations issued by the U.S. Treasury Department's Office of Foreign Assets Control, under which the PDVH Shares are blocked property, bar the Court from authorizing the eventual issuance of a writ of attachment with respect to the PDVH Shares, provided that issuance, delivery, and service of any such writ will not occur unless the relevant judgment creditor obtains a specific license from OFAC or the Venezuelan sanctions regime changes so that the PDVH Shares are no longer blocked property.

Whether the pertinent time for conducting an alter ego analysis with respect to the Bolivarian Republic of Venezuela and Petróleos de Venezuela, S.A. is: (i) the period between a judgment creditor filing a motion seeking a writ of attachment and the subsequent issuance and service of the writ, (ii) the time of the injury that gave rise to the judgment creditor's judgment, or (iii) some other time.

May 4, 2022
Wilmington, Delaware

HONORABLE LEONARD P. STARK
UNITED STATES CIRCUIT JUDGE